**J. BENNETT FRIEDMAN, ESQ.**, State Bar No. 147056
    *jfriedman@jbflawfirm.com*
**STEPHEN F. BIEGENZAHN, ESQ.**, State Bar No. 60584
    *sbiegenzahn@jbflawfirm.com*
**MICHAEL D. SOBKOWIAK, ESQ.**, State Bar No. 242718
    *msobkowiak@jbflawfirm.com*

**FRIEDMAN LAW GROUP, P.C.**
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone: (310) 552-8210
Facsimile: (310) 733-5442

[Proposed] Attorneys for Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.  2:14-bk-12028-NB |
| **HDOS ENTERPRISES,** a California corporation, | Chapter 11 |
|     Debtor and Debtor in Possession. | **DEBTOR'S EMERGENCY FIRST DAY MOTION FOR ORDER ESTABLISHING PAYMENT PROCEDURES FOR PACA CLAIMS** |
| | Date:  [Hearing To Be Set]<br>Time:<br>Place:  Ctrm. 1545<br>      255 E. Temple Street<br>      Los Angeles. CA 90012 |

-1-

# I.

## INTRODUCTION

HDOS Enterprises (the "Debtor") is an employee-owned business whose main business is operating approximately 92 Hot Dog on a Stick restaurants (the "Restaurants"), predominantly in malls throughout the western United States. A detailed description of the Debtor's history and current operations is contained in the concurrently filed Declaration of Dan Smith ("Smith Declaration").

The Debtor purchases large quantities of lemons (to make the Debtor's fresh lemonade) and French fries, both of which may be covered under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("PACA"). The cost of these products to the Debtor is relatively low and the Debtor estimates it will owe suppliers approximately $42,000 on the petition date for products that might be covered by PACA. The Debtor proposes the PACA procedures discussed below to allow potential PACA claimants to submit claims, to administer those claims, and to allow the Debtor to ensure an orderly transition to chapter 11.

The Motion is based on the concurrently filed Declaration of Dan Smith in Support of the First Day Motions (the "Smith Declaration") and the other papers of record in this case.

## II.    PACA Claims.

The Debtor believes that a certain portion of the products it has purchased but not yet paid for may qualify as "perishable agricultural commodit[ies]" under PACA. PACA defines "perishable agricultural commodity" broadly as "fruits and fresh vegetables of every kind and character [whether or not frozen or packed in ice]." 7 U.S.C. §499a(b)(4). PACA provides various protections to fresh fruit and vegetable sellers, including the establishment of a statutory constructive trust (the "PACA Trust") consisting of a buyer's entire inventory of food or other derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the commodities or products (collectively, the "PACA Trust Assets"). *See* 7 U.S.C.

§ 499e(c)(2). Assets subject to a PACA Trust are preserved as a non-segregated floating trust and may be commingled with non-trust assets. Funds held in a PACA Trust are not property of a debtor's estate. *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1995).

It is likely that certain of the Debtor's suppliers (the "PACA Claimants") will be eligible to assert claims under PACA (the "PACA Claims"). In exercising their rights under PACA, PACA Claimants impose a PACA Trust on certain of the products granting them priority ahead of all other secured and unsecured creditors of the Debtor's estate ("Estate"). Accordingly, payment of PACA Claims at this time will not prejudice or affect the amount available for distributions to other creditors of the Debtor. Further, it is imperative that the Debtor establishes procedures for the orderly reconciliation and disposition of PACA Claims to ensure that the supply of fresh produce and related products continues unimpeded.

As discussed above, after a review of the Debtor's invoices, the Debtor believes that PACA Claimants will have claims totaling approximately $42,000. As such, the Debtor proposes to set aside $50,000 to ensure the Debtor is able to satisfy all PACA Claims.

## III.

## THE PACA PROCEDURES

PACA requires that sellers of perishable agricultural commodities take certain procedural steps to preserve their rights as trust beneficiaries. To preserve the protection of the PACA Trust, the trust beneficiary (*i.e.*, the seller of fresh produce) must provide written notice (a "PACA Notice") to the buyer of such goods of its intent to preserve the benefits of the PACA Trust. As such, the Debtor proposes that the Court approve the procedures described below (the "PACA Procedures"), which are designed to facilitate the resolution of PACA Claims in an orderly and efficient manner.

      1.    Reserve for Allowed PACA Claims. Instead of holding in trust all proceeds of the fresh fruits and vegetables purchased by the Debtor, the Debtor will set aside funds in the amount of $50,000 (the "PACA Claims

FIRST DAY PACA MOTION

Reserve") for payment of PACA Claims allowed pursuant to the PACA Procedures (the "Allowed PACA Claims"). The Debtor believes this amount will be sufficient to ensure full distribution to all Allowed PACA Claims.

2.    Notice of PACA Order. The Debtor will send a copy of the order approving this Motion (the "PACA Order") by first-class mail to all persons or entities that have supplied the Debtor with goods covered by PACA within 72 hours of the entry thereof.

3.    PACA Notices. Any PACA Claimant seeking the protection of a PACA Trust must file on the docket in this Bankruptcy Case a PACA Notice including the amount requested as a PACA Claim and the basis therefor within the earlier of (a) the time limit to make a PACA Claim under the statutory guidelines set forth in 7 U.S.C. § 499e(c)(3)-(4) (each, a "Filed PACA Notice") or (b) 21 days from the entry of the PACA Order. Each filed PACA Notice shall be served on the Debtor and the United States Trustee.

4.    Objection to PACA Claims. The Debtor or any other party in interest shall have 14 days (the "Objection Period") from the filing of the Filed PACA Notice to object to any Filed PACA Notice (each, a "PACA Notice Objection") and set a hearing on the resolution of the PACA Claim encompassed therein (each, a "PACA Notice Hearing"). Each filed PACA Notice Objection shall be served on the PACA Claimant that filed the PACA Notice and the United States Trustee.

5.    Allowance of PACA Claims. If the Objection Period expires as to a PACA Notice and no PACA Notice Objection has been filed, the amount requested in said PACA Notice shall be deemed allowed and shall become an Allowed PACA Claim. If a PACA Notice Hearing is held and the Court deems the disputed PACA Claim to be valid, the PACA Claim

FIRST DAY PACA MOTION

1  shall be allowed in the amount ordered by the Court and shall become an

2  Allowed PACA Claim.

3        6.     Payment of Allowed PACA Claims.  The Debtor shall pay all

4  Allowed PACA Claims as administrative expenses of the Estate from the

5  PACA Claims Reserve.  Any holder of a PACA Claim that accepts payment

6  from the Debtor on account of its Allowed PACA Claim shall be deemed to

7  have waived, released, and discharged any and all claims, of any type, kind,

8  or priority on account of or in connection with its PACA Claim against the

9  (i) Debtor, (ii) any former, present, or future officer, director, or employee of

10  the Debtor, (iii) the Debtor's assets and properties and (iv) any funds or

11  amounts held in trust by the Debtor.

12  **IV.**

13  **ARGUMENT**

14        The payment of Allowed PACA Claims is warranted under sections 105(a),

15  363, 507, and 541 of the Bankruptcy Code and relevant case law.  Assets governed by

16  PACA do not constitute property of the Debtor's estate.  *See In re Kornblum & Co.*, 81

17  F.3d 280, 284 (2d Cir. 1995); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp.

18  346, 348 (S.D.N.Y. 1993).  As a result, the distribution of assets to the PACA Claimants

19  falls outside the priority scheme established by the Bankruptcy Code, and the PACA

20  Claimants holding Allowed PACA Claims are, thus, entitled to payment ahead of the

21  Debtor's other creditors.  *See, e.g., In re Magic Rests., Inc.*, 205 F.3d 108, 110 (3d Cir.

22  2000); *Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374,

23  1377-78 (3d Cir. 1994).  In addition, the resolution of PACA Claims is subject to the

24  jurisdiction of the Bankruptcy Court.  *See Monterey Mushrooms, Inc. v. Carolina Produce*

25  *Distribs.., Inc.*, 110 B.R. 207, 209 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc. v. United*

26  *Fruit and Produce Co.*, 86 B.R. 14, 16 (Bankr. D. Conn. 1988).

27        Because the funds held in a PACA Trust are not property of the Estate, and

28  the Debtor will be establishing the PACA Claims Reserve to satisfy all potential PACA

FIRST DAY PACA MOTION

1  Claims, which will contain less funds than would otherwise be a part of the PACA Trust,

2  the relief requested here does not prejudice the Debtor's creditors.  In fact, payment made

3  to PACA Claimants on account of Allowed PACA Claims is consistent with the intent of

4  PACA and, moreover, will inure to the benefit of the Debtor and all parties in interest by

5  facilitating the continued purchase and receipt of fresh produce and other products and

6  avoiding potential disruption to the Debtor's operations.  In addition, the PACA

7  Procedures satisfy due process by providing interested parties with notice and an

8  opportunity to file Notices of PACA Claims and to object to such claims.

9              Further, in certain circumstances, shareholders, officers, or directors of a

10  corporate entity who are in a position to control trust assets but breach the fiduciary duty to

11  preserve those assets may be held personally liable under PACA.  *See Sunkist Growers,*

12  *Inc. v.  Fisher*, 104 F.3d 280, 283 (9th Cir. 1997); *see also Golman-Hayden Co.*, 217 F.3d

13  at 350 (noting that a court will inquire (i) whether the individual's involvement with the

14  corporation was sufficient to establish legal responsibility and (ii) whether the individual,

15  in failing to exercise any appreciable oversight of the corporation's management, breached

16  a fiduciary duty owed to the PACA creditors, to determine personal liability).  Thus, to the

17  extent that any valid obligations arising under PACA remain unsatisfied by the Debtor, the

18  Debtor's officers and directors may be subject to lawsuits during the pendency of this Case.

19  Any such lawsuit (and the ensuing potential liability) would distract the Debtor and its

20  officers and directors in their attempt to implement a successful reorganization strategy

21  and, moreover, could lead to the assertion of substantial indemnification claims under the

22  Debtor's governing documents, and applicable laws to the detriment of all parties in

23  interest.

24              Finally, payment of Allowed PACA Claims will inure to the benefit of the

25  Estate by preserving goodwill between the Debtor and certain of the vendors of fresh

26  produce.  Without implementation of these procedures, the Debtor could be subject to

27  numerous claims and adversary proceedings, including motions by PACA claimants for

28

1  relief from the automatic stay and/or injunctive relief, which would result in the

2  unnecessary expenditure of time, effort, and money by the Debtor.

3  In light of the foregoing, the Debtor respectfully submits that the relief

4  requested here is: (i) necessary and essential for the Debtor's reorganization; (ii) in the best

5  interests of the Estate, and its creditors; and (iii) necessary to prevent immediate and

6  irreparable harm.

7  ## V.

8  ## REQUEST FOR WAIVER OF STAY

9  Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

10  Procedure (the "Bankruptcy Rules"), the Debtor seeks (i) immediate entry of an order

11  granting the relief sought here and (ii) a waiver of any stay of the effectiveness of such an

12  order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that

13  relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21

14  days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a

15  claim that arose before the filing of the petition."  Accordingly, where the failure to grant

16  any such requested relief would result in immediate and irreparable harm to the Estate, the

17  Court may allow the Debtor to pay all or part of a claim that arose before the Petition Date

18  prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h)

19  provides that "[a]n order authorizing the use, sale, or lease of property other than cash

20  collateral is stayed until the expiration of 14 days after entry of the order, unless the court

21  orders otherwise."

22  As set forth above and in the Smith Declaration, the payment of PACA

23  Claims is necessary to prevent the immediate and irreparable damage to the Debtor's

24  operations (and customer confidence therein), going-concern value, and ability to

25  reorganize that would result from the Debtor's inability to obtain indispensable goods and

26  services.  Accordingly, the Debtor submits that ample cause exists to justify (i) the

27  immediate entry of an order granting the relief sought here and (ii) a waiver of the

28  fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

FIRST DAY PACA MOTION

**VI.**

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief sought here; and granting to the Debtor such other and further relief as the Court may deem proper.

Dated: February 3, 2014      FRIEDMAN LAW GROUP, P.C.


By _____
J. BENNETT FRIEDMAN, ESQ.
STEPHEN F. BIEGENZAHN, ESQ.
MICHAEL D. SOBKOWIAK, ESQ.
Proposed Attorneys for Debtor and Debtor-in-Possession HDOS Enterprises

FIRST DAY PACA MOTION