**J. BENNETT FRIEDMAN, ESQ., State Bar No. 147056**
***jfriedman@jbflawfirm.com***
**STEPHEN F. BIEGENZAHN, ESQ., State Bar No. 60584**
***sbiegenzahn@jbflawfirm.com***
**MICHAEL D. SOBKOWIAK, ESQ., State Bar No. 242718**
***msobkowiak@jbflawfirm.com***

**FRIEDMAN LAW GROUP, P.C.**
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone: (310) 552-8210
Facsimile: (310) 733-5442

[Proposed] Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

**HDOS ENTERPRISES,**
a California corporation,

Debtor and Debtor in Possession.

Case No. 2:14-BK-12028-NB

Chapter 11

**EXHIBITS TO ORDER APPROVING USE OF CASH COLLATERAL PURSUANT TO STIPULATION FOR INTERIM USE OF CASH COLLATERAL**

Date: February 4, 2014
Time: 2:00 p.m.
Judge: Hon. Neil Bason
Courtroom: 1545

# Exhibit "A"

Peter L. Duncan (Cal. Bar No. 123308)
PYLE SIMS DUNCAN & STEVENSON
A Professional Corporation
401 "B" Street, Suite 1500
San Diego, California 92101
(619) 687-5200
(619) 687-5210 - facsimile

Attorneys for Secured Creditor Torrey Pines Bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>HDOS ENTERPRISES, a California corporation,<br><br>Debtor. | Case No. 2:14-BK-12028-NB<br><br>Chapter 11<br><br>STIPULATION FOR INTERIM USE OF CASH COLLATERAL<br><br>Date: February 4, 2014<br>Judge: Hon. Neil Bason<br>Courtroom: 1545 |

HDOS Enterprises, Debtor and Debtor in Possession (the "Debtor"), and secured creditor Torrey Pines Bank, a division of Western Alliance Bank ("TPB"), hereby enter into this Stipulation for the Interim Use of Cash Collateral. Debtor and TPB are collectively referred to herein as the "Parties."

**RECITALS**

A. Debtor commenced the above-captioned chapter 11 case ("Case") by filing a voluntary petition on February 3, 2014 (the "Petition Date"). Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B. TPB is the present owner and holder of a promissory note dated March 11, 2013 ("Term Note") executed by Borrower evidencing loan no. 0302131801 in the principal amount of $600,000 plus interest thereon at the annual percentage rate of seven percent (7% ) (the "Term Loan"). By the terms of the Note, Borrower was to pay TPB 36 regular monthly principal and interest payments until March 11, 2016, on which date the unpaid principal and accrued interest would become due and payable.

C. The Term Note is secured by a Commercial Security Agreement ("Term Note Security Agreement") dated March 11, 2013 granting the Bank a first priority security interest in the Borrower's Inventory, Chattel Paper, Accounts, Equipment, Deposit Accounts and General Intangibles, specifically including trademarks, trade secrets and copyrights and all proceeds thereof ("Pre-Petition Collateral"). The Term Note, Term Note Security Agreement and all related supporting documents are sometimes hereinafter referred to as the "Term Loan Documents."

D. TPB is also the present owner and holder of the holder of a promissory note dated September 17, 2013, as subsequently amended ("Revolving Note"), executed by Borrower evidencing a revolving line of credit loan no. 0302134217 in the maximum amount of $1,000,000 plus interest thereon at (the "Revolving Loan"). By the terms of the Revolving Note, Borrower was to pay monthly interest and to repay all advances plus accrued and unpaid interest initially at a variable rate followed by a fixed rate of seven percent (7%) on or about April 17, 2014. The Revolving Note matures on or before September 17, 2017. The Revolving Note is secured by a Commercial Security Agreement dated September 17, 2013 granting the Bank a security interest in

the Pre-Petition Collateral ("Revolving Note Security Agreement"). The Revolving Note, Revolving Note Security Agreement, and all related supporting documents are sometimes hereinafter referred to as the "Revolving Loan Documents."

E.    TPB perfected its security interest in connection with the Term Note and the Term Note Security Agreement in the Pre-Petition Collateral by filing a UCC-1 financing statement with the California Secretary of State on March 22, 2013 as document no. 13-7352944745. In addition, TPB holds a perfected security interest in cash on hand because TPB is the bank at which Debtor currently maintains the following deposit accounts within the meaning of California Commercial Code section 9104(a): general checking account no. 4110113644, construction/impress account no. 4110113709 and payroll account no. 4110113679 ("Bank Accounts"). The combined balance of the Bank Accounts was $1,007,685.32 as of the Petition Date.

F.    As of the Petition Date, TPB's secured claim was $446,689.96 in principal and interest under the Term Note and $803,145.90 in principal and interest under the Revolving Note, not including prepetition attorneys' fees and costs or postpetition interest, attorneys' fees and costs and other items, if any, allowed pursuant to 11 U.S.C. section 506(b) ("TPB Secured Claim"). The Debtor and TPB stipulate and agrees that TPB's Secured Claim is oversecured.

G.    Debtor acknowledges that the cash balances in the Bank Accounts and all cash proceeds of the Pre-Petition Collateral that will be received by Debtor after the Petition Date are the cash collateral of TPB within the meaning of Bankruptcy Code Section 363(a) (collectively the "Cash Collateral").

H.    Debtor asserts that it has a continued need for use of the Cash Collateral because it does not have any unencumbered cash from which to pay employees, vendors, utilities and other creditors.

I. TPB asserts that there are non-monetary defaults under the Term Loan Documents and the Revolving Loan Documents, including, but not limited to, violations of the Subordination Agreement and Term Loan Documents, the Debt Service Coverage Ratio ("DSCR") covenants in the Business Loan Agreements with respect to the Term Loan and Revolving Loan, failure to maintain a Tangible Net Worth at least $2MM as of the year end of calendar year 2013, and other non-monetary covenant defaults.

J. The Debtor denies that there are non-monetary defaults under the various loan agreements.

K. TPB has demanded adequate protection of its interest in the Debtor's interest in the Collateral and the for Debtor's use of the Cash Collateral.

WHEREFORE, with reference to the above stated Recitals, the Parties hereby stipulate as follows:

1. Use of Cash Collateral. During the period commencing immediately after the the Petition Date, through March 31, 2014 (the "Cash Collateral Period"), by which time the Court shall conduct a final hearing on the issue of the Debtor's right to continue use of Cash Collateral, the Debtor is authorized to use the Cash Collateral held by TPB, to operate its business and to pay necessary and ordinary business expenses, including payroll and other related items only for the ordinary and regular operation of Debtor's business and on the following terms and conditions:

a. Cash Collateral DIP Accounts. Subject to the relief requested in its Motion For An Order Authorizing Debtor To Maintain Its Existing Bank Accounts And Cash Management System, Debtor shall maintain its debtor in possession ("DIP") accounts at TPB pursuant to the Guidelines promulgated by the Office of the United States Trustee ("UST Guidelines") by opening three DIP Accounts (general, payroll, and tax). During the Cash Collateral Period, Debtor shall

deposit all Cash Collateral into the DIP General Account. Debtor shall maintain at all times the ability to trace all monies deposited to and removed from the DIP General Account.

b. Limitation on Use. The interim use of cash collateral by Debtor approved by the Court's order approving this stipulation ("Cash Use Order") is limited to the approved and budgeted amounts that are necessary operating expenses as set forth on the operating budget attached hereto marked Exhibit A and incorporated herein by this reference (the "Budget") and to checks in float as of the Petition Date; provided however, that this authorization shall also include an upward variance so long as: (a) the variance is no more than 20% on any given line item, and (b) the total of all cash collateral expended in any given time period covered by the Budget, does not exceed 15% of the total amount of expenditures provided for in the Budget for that time period. Debtor shall not use any Cash Collateral to make any payments to any other prepetition secured or unsecured creditor unless approved to do so by Order of the Court. Additionally, Debtor shall not use any Cash Collateral to make any payments under its Employee Stock Ownership Plan or to any severance payments to current or former employees unless ~~set forth in the Budget or~~ approved by Order of the Court; and Debtor's payments to Shamrock on pre-existing obligations as set forth in the Budget shall be limited by the provisions of 11 U.S.C. 503(B)(9). Unless specified in the Budget, no costs of administration or administrative expenses will be paid during the Cash Collateral Period. No withdrawals from the Cash Collateral account may be made without the express written consent of TPB (including the consent granted in this Stipulation), or an order of the Bankruptcy Court.

c. Reporting.

i. Commencing February 14, 2014, and bi-weekly thereafter, the Debtor shall provide to TPB, through its attorneys a bi-weekly Cash Activity and Position Report (the "Cash

Report"), which shall, at a minimum, contain a summary, together with the backup detail, of the following information:

(1) Beginning Cash Balance;

(2) Cash Received;

(3) Cash Disbursed; and

(4) Ending Cash Balance.

The first Cash Report shall cover the period beginning with the Petition Date and ending February 14, 2014. Thereafter, the Cash Reports shall cover the fourteen-day period beginning on the day following the close of the prior reported period.

ii. On or before February 14, 2014, the Debtor shall provide to TPB, through its attorneys of record: (a) an income statement (profit and loss) for YTD January 26, 2014, and (b) Cash Flow statement for YTD January 26, 2014.

iii. Debtor shall provide TPB's employees and/or agents reasonable access to the books and records at its principal place of business for the purpose of conducting an audit if its books and records upon forty-eight hours' written notice during normal business hours, but no more frequently than one time per month.

iv. Debtor shall provide to TPB, through its attorneys of record a four week periodic report showing the comparison of actual operating results to the Budget for a four week period and from the Petition Date to date, delivered to TPB no later than the tenth (10th) day after the end of the most recent four-week accounting period.

2. **Adequate Protection**

a. TPB is being provided adequate protection pursuant to this Interim Stipulation, pursuant to sections 361 and 363 of the Bankruptcy Code. Pursuant to sections 361,

363, and 507(b) of the Bankruptcy Code, as and for adequate protection of TPB's interests in the Pre-Petition Collateral (including Cash Collateral), TPB will receive the rights and protections set forth in this Stipulation.

b. In light of its agreement to allow the use of Cash Collateral ~~and to subordinate its security interests and superpriority claims to the Carve Out~~, as described below, TPB is entitled to the following adequate protection:

i. TPB shall be paid its regular debt service with interest at the non-default rate during the Cash Collateral Period. TPB's acceptance of these payments is without prejudice to its right to accrue interest at the default rate as provided in the Term Loan Documents and the Revolving Loan Documents. If all payments are timely made on or before the date due (not including any cure period after default) in good and collected funds under this Stipulation, TPB will agree to waive default interest under the Term Loan Documents and the Revolving Loan Documents during the Cash Collateral Period.

ii. TPB shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code effective *nunc pro tunc* to the Petition Date, and the "equities of the case" exception shall not apply with respect to the TPB's security interest.

iii. TPB is hereby granted, pursuant to Bankruptcy Code §§ 361 and 363, valid and perfected security interests and liens (collectively, the "Replacement Liens") in all of Debtor's post-petition assets, including, but not limited to: (a) all Pre-Petition assets that are described as Collateral under the Term Loan Documents or Revolver Loan Documents and all proceeds thereof received on or after the Petition Date; (b) all other assets acquired by the Debtor after the Petition Date, including cash, accounts, equipment, inventory, general intangibles, instruments, documents, investment property, letter-of-credit rights, deposit accounts, securities accounts, chattel paper, commercial tort claims, fixtures, goods, software, and all proceeds thereof; and (c) all of the Debtor's trademarks,

copyrights and patents, whether acquired before or after the Petition Date; (collectively, the property described in subsections (a)-(c) of this paragraph is referred to as the "Replacement Collateral"). All of TPB's Collateral, the Cash Collateral and the Replacement Collateral, shall secure repayment of the Debtor's obligations to TPB under the Term Loan Documents and the Revolver Loan Documents. The Replacement Liens granted to TPB under this Stipulation shall be effective and continuing first position liens and security interests without the need for any execution, filing or recordation of any security agreement, deed of trust, mortgage, pledge agreement or financing statement of any kind.

c. If and to the extent that the Replacement Liens do not provide TPB with adequate protection of TPB's secured interests, then TPB shall receive a super-priority administrative expense claim under Bankruptcy Code § 507(b) to the full extent necessary to compensate TPB fully for the use of its cash collateral by Debtor. The super-priority administrative expense shall have priority over all administrative expenses incurred in the Case of any kind, including administrative expenses of the kinds specified in, or allowable under, 11 U.S.C. §§ 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726. Notwithstanding any provision of the Cash Use Order that may be construed to the contrary, the fact that TPB has been granted the entitlement to receive a super-priority administrative expense claim shall not preclude or prime payment of bankruptcy fees due pursuant to 28 U.S.C. § 1930.

INAPPLICABLE FOR INTERIM RELIEF.

d. Nothing in this Stipulation shall be deemed or construed as an admission or waiver by TPB regarding the Debtor's use of Cash Collateral other than for the limited purposes and during the Cash Collateral Period expressly provided herein. In addition, nothing in this Stipulation shall prejudice the rights of TPB to seek any further relief that TPB deems necessary or appropriate under the circumstances (including, but not limited to, the right to seek: (i) relief from stay with respect to the Collateral, Cash Collateral or Replacement Collateral; (ii) appointment of a chapter 11

trustee; (iii) conversion of the Case to chapter 7; (iv) termination of the Debtor's use of Cash Collateral; (iv) dismissal of the Case or other relief.

e.  Debtor shall maintain insurance as required by the requirements of the Office of the United States Trustee and promptly make all required payments therefor, and comply with all other requirements of law that are necessary to preserve and maintain the value of TPB's liens and security interests in the Collateral and all property upon which a lien is granted under this Stipulation.

f.  Debtor shall continue to pay, in accordance with the Budget, all employment related expenses, including but not limited to payroll taxes and other state and federal requirements.

3.  Termination. Any of the following events that affect the Debtor shall constitute a "Termination Event" as against the Debtor unless TPB waives the same in writing: (a) any stay, reversal, vacatur, rescission or other modification of the terms of this Stipulation not consented to by TPB; (b) entry of an order dismissing the Case or converting the Case to one under chapter 7 of the Bankruptcy Code, in each case not consented to by TPB; (c) any material misrepresentation of fact made by any representative of the Debtor to TPB about the Debtor's business or financial condition or the collateral; (d) use by the Debtor of Cash Collateral in excess of the amounts permitted by the Cash Use Order once the Court has determined that such use constitutes an Event of Default under Paragraph 4 that has not been cured, and the Court has entered an order to that effect; (e) the entry of an order priming or subordinating any lien or interest of TPB or to encumber the Collateral; (f) the Debtor's failure to deliver the financial reporting required herein on the date provided, if such failure is not cured within three (3) days after receipt of written notice thereof; and (g) the appointment of a trustee or an examiner with enlarged powers in the Case. A Termination Event shall terminate the Debtor's right to use Cash Collateral pursuant to the order approving this Stipulation. Such an occurrence shall not impair the Debtor's right to seek the continued use of Cash Collateral thereafter

on the grounds that TPB's interests are adequately protected. All of the rights, remedies, benefits and protections provided to TPB shall survive a Termination Event.

4. Event of Default. Subject to any immediate termination occurring pursuant to Paragraph 3, in the event that the Debtor should allegedly default in the performance of any of its obligations hereunder (other than a terminating event in which case Paragraph 6 will control), TPB shall provide to the Debtor, the Debtor's counsel, and counsel for the Official Committee of Unsecured Creditors ("Committee"), if any counsel is retained, or the Committee, if no counsel is retained, or the twenty largest unsecured creditors if no committee is formed (collectively, the "Noticed Parties") via facsimile or e mail, and first-class mail, written notice of any alleged default ("Default Notice"). The Debtor shall have a grace period of seven (7) business days after the Debtor's receipt of the Default Notice ("Grace Period") within which to cure any alleged default. If the Debtor cures any alleged default, TPB shall provide written acknowledgment of the Debtor's cure to the Debtor and all other Noticed Parties. In the event that the Debtor should fail to cure any alleged default under this Stipulation within the Grace Period (an "Event of Default"), TPB may file with the Court a declaration asserting an Event of Default ("Declaration of Default"). The Debtor shall be entitled to oppose any such asserted Event of Default by filing a written opposition and request for a hearing thereon on shortened time ("Opposition"), within three (3) Court days of the filing of the Declaration of Default. The Debtor shall be authorized to use Cash Collateral pending the resolution of this issue by the Court. The Debtor's opposition shall be limited to: (a) whether the asserted default occurred; (b) whether the asserted default is excused; or (c) whether the Debtor timely cured the asserted default. If the Debtor does not file and serve an Opposition within three (3) Court days from TPB's filing and service of the Declaration of Default, TPB's consent for use of Cash Collateral shall be revoked on the fourth Court day after TPB's filing of the Declaration of Default. If, however, the Debtor timely files its Opposition, whether the Debtor is authorized to

continue its use of Cash Collateral will depend solely on whether the Debtor committed an Event of Default, whether the default was excused, and whether it was timely cured, all of which shall be determined by the Court. If the Court finds that the Debtor did not commit an Event of Default, was excused from committing an Event of Default, or timely cured an Event of Default, the Debtor shall be authorized to continue use of Cash Collateral. If, however, the Court finds that the Debtor did commit an Event of Default, was not excused from committing an Event of Default, and failed to timely cure an Event of Default, the Debtor's use of cash collateral shall be immediately revoked upon the Court's entry of an order to that effect.

5.  Effectiveness; Entire Agreement. This Stipulation shall only become effective upon the entry of an order approving this Stipulation without modification (unless such modification is approved by all parties hereto). This Stipulation represents the entire agreement of the parties with regard to the subject matter hereof. No prior or contemporaneous agreement, written or oral, may be used to supplement, amend, or modify any of the provisions of this Stipulation.

6.  Time is of the Essence. Time is of the essence with respect to all performance required under this Stipulation, including, but not limited to, within the meaning of California Civil Code section 1492.

7.  Modification. This Stipulation may be modified only in a writing signed by all parties, without further Order of the Court or other notice.

8.  Severability. In the event any portion of this Stipulation is held unenforceable, the enforceability of any other provision shall not be affected.

9.  Section Headings. The section headings contained herein are for reference purposes only and shall not affect in any way the meaning or interpretation of this Stipulation.

10. Assignability, Binding Effect and Survival. This Stipulation shall inure to the benefit of and shall be binding upon the parties, their successors and assigns. The Debtor may not assign

this Stipulation without TPB's consent. TPB may assign its rights and obligations under this Stipulation to any party, without advance notice.

11. Counterparts. This Stipulation may be signed in counterpart originals, which taken together shall constitute one Stipulation. This Stipulation may be signed by facsimile of pdf signatures, which shall be deemed the equivalent of original signatures for all purposes.

Dated:

PYLE SIMS DUNCAN & STEVENSON
A Professional Corporation

By: /s/ Peter L. Duncan
Peter L. Duncan
Attorneys for Secured Creditor Torrey Pines Bank

Dated: 2/4/14

FRIEDMAN LAW GROUP, P.C.

By:
J. Bennett Friedman
Proposed Attorneys for Debtor in Possession

# Exhibit "B"

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Neil Bason, Presiding**
**Courtroom 1545 Calendar**

**Tuesday, February 04, 2014** **Hearing Room 1545**

2:00 PM
**2:14-12028 HDOS Enterprises** **Chapter 11**

**#7.00** Preliminary hrg re: Debtor's motion for 60 Day Interim Order Authorizing Use of Cash Collateral

Docket 9

**Tentative Ruling:**

Grant the Cash Collateral motion on an interim basis, subject to some clarifications and pursuant to Judge Bason's standard conditions (set forth below), and with the limitations set forth in the tentative ruling for the status conference (calendar no. 9, 2/4/14 at 2:00 p.m.). Appearances required.

Pursuant to LBR 9021-1(b)(1)(B), movant must serve and lodge a proposed order via LOU within 7 days after the hearing date.

If you do not appear, and the matter is not adequately resolved by consent, then the court may rule against you.

I. Clarifications. The declaration of Mr. Dan Smith (dkt. 12 at 4:14) refers to a line item variance of no more than "fifteen or twenty percent." What specific authorized variance is the debtor requesting? Does the debtor have agreements with any or all of its secured creditors?

II. Standard conditions. The following are Judge Bason's standard conditions for (A) use of cash collateral or (B) postpetition financing by creditor(s) holding prepetition claim(s):

(1) Form of order.

(a) Any proposed order granting the motion shall include this tentative ruling as an exhibit, thereby adopting it as the written ruling of the court.

(b) Orders approving the use of cash collateral may be on local form F2081-1.1.ORDER.CASH.COLLATERAL.

(c) Rather than repeating any terms set forth in the motion or any stipulation, the proposed order should simply incorporate those terms by reference (including the docket number of the document) or simply grant the motion (except as modified in this tentative ruling or as otherwise directed by

Main Document Page 17 of 18

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Neil Bason, Presiding**
**Courtroom 1545 Calendar**

**Tuesday, February 04, 2014** **Hearing Room 1545**

2:00 PM
**CONT... HDOS Enterprises** **Chapter 11**

the court).

(2) Interim and final relief. Except as specifically provided in any order granting the motion, any initial relief shall be on an interim basis only, and shall be subject to modification at a final hearing to be noticed and held as follow:

Hearing: TBD
Deadline for debtor to serve and file notice of hearing: TBD

(3) Minimum adequate protection. In addition to the postpetition security interests that are automatically provided pursuant to 11 U.S.C. 552 (*e.g.,* in traceable proceeds and profits), and subject to any more comprehensive protection that may be included in the motion or related papers, the debtor shall provide at least the following protection to any creditor with a security interest in the subject property, pursuant to 11 U.S.C. 361-364, as applicable:

(a) Insurance. The debtor is directed to maintain insurance on the property in a dollar amount at least equal to the debtor's good faith estimate of the value of such creditor's interest in any collateral that is typically insured, and such insurance shall name such creditor as an additional insured.

(b) Taxes. The debtor is directed to remain current on payments on account of postpetition real estate taxes (to the extent that real estate is part of the collateral).

(c) Disclosures/access. The debtor is directed to provide, upon such creditor's reasonable request, an accounting of postpetition rents, profits, and expenses, appropriate documentation of those things, and access for purposes of inspection or appraisal.

(d) Disputes. In the event of any disputes regarding the rulings herein, the parties are directed to meet and confer and, if they cannot resolve their disputes consensually, contact the chambers of Judge Bason to arrange a mutually convenient time for a telephonic hearing to address such disputes.

(4) Limitation on postpetition liens. In the event that the motion or related papers seek authority to grant postpetition liens to the creditor(s) *with respect to prepetition debts*, any such liens shall be limited as follows:

(a) Extent. Such liens shall be limited to the type of collateral in which the creditor held a security interest as of the petition date, unless the order approving the motion not only states the new types of collateral but also includes a specific statement that such types of collateral are different from

2/4/2014 10:08:46 AM Page 53 of 58

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Neil Bason, Presiding**
**Courtroom 1545 Calendar**

**Tuesday, February 04, 2014** **Hearing Room 1545**

2:00 PM
**CONT... HDOS Enterprises** **Chapter 11**

the prepetition collateral. For example, postpetition liens shall not extend to the proceeds of any avoidance actions, any recoveries under 11 U.S.C. 506 (c), or any "carveout" under 11 U.S.C. 552, unless the order approving the motion specifically states otherwise.

(b) Priority. Such liens shall be limited to the same priority as the security interest held by the creditor as of the petition date.

(c) Dollar amount. Such liens shall be limited to the dollar amount needed to protect the creditor against diminution in the value of the secured claims as of the petition date.

(d) Perfection and validity/non-avoidability as of petition date. Such liens shall be limited to the extent that the creditor's security interests as of the petition date were duly perfected and are valid and unavoidable.

(e) Automatic postpetition perfection. Any automatic perfection of such liens shall be subject to any applicable limitations regarding the Court's authority, jurisdiction, or due process.

(5) Automatic disapproval of insufficiently disclosed provisions. Any provision of the type listed in FRBP 4001(c)(1)(B) or in local form F4001-2 (*e.g.*, cross-collateralization) shall be deemed automatically disapproved and excepted from any order granting the motion, notwithstanding any other provision of such order, unless either:

(a) such provision is specifically and prominently disclosed in the motion papers in a checklist (such as local form F4001-2), or alternatively

(b) such provision is specifically identified in any proposed order granting the motion, using terminology of the type used in FRBP 4001(c)(1)(B) or local form F4001-2 (*e.g.*, any "cross-collateralization" that is not specifically identified as such is deemed to be disapproved).

**Party Information**

**Debtor(s):**

HDOS Enterprises — Represented By Jerome Bennett

**Movant(s):**

HDOS Enterprises — Represented By Jerome Bennett

2/4/2014 10:08:46 AM Page 54 of 58