1
**J. BENNETT FRIEDMAN, ESQ., State Bar No. 147056**
    *jfriedman@jbflawfirm.com*
2
**STEPHEN F. BIEGENZAHN, ESQ., State Bar No. 60584**
    *sbiegenzahn@jbflawfirm.com*
3
**MICHAEL SOBKOWIAK, State Bar No. 242718**
    *msobkowiak@jbflawfirm.com*

4
**FRIEDMAN LAW GROUP, P.C.**
1900 Avenue of the Stars, 11th Floor
5
Los Angeles, California 90067-4301
Telephone: (310) 552-8210
6
Facsimile: (310) 733-5442

7
Proposed Attorneys for Debtor in Possession
HDOS ENTERPRISES
8

9

10
UNITED STATES BANKRUPTCY COURT

11
CENTRAL DISTRICT OF CALIFORNIA

12
LOS ANGELES DIVISION

13

| | |
|---|---|
| In re | CASE NO.  2:14-bk-12028-NB |
| | Chapter 11 |
| HDOS ENTERPRISES, | APPLICATION TO EMPLOY A & G REALTY PARTNERS AS DEBTOR'S REAL ESTATE CONSULTANT; DECLARATION OF ANDREW MARGOLICK IN SUPPORT |
| Debtor in Possession. | DATE:        [None Required] TIME: PLACE: |

14
15
16
17
18
19
20
21
22
23

24
    HDOS Enterprises, the debtor and debtor in possession ("Debtor") in this chapter 11

25
bankruptcy case ("Case"), respectfully applies to this Court, pursuant to 11 U.S.C. §327(a) for an

26
Order approving the employment of A&G Realty Partners, LLC ("A&G" or "Consultant") to

27
represent the Debtor in connection with the analysis of the remaining unexpired commercial leases

28
to which Debtor was a party at the time the Case was commenced ("Lease[s]"); to counsel Debtor

1

with respect to the assumption, rejection or renegotiation of the Leases; and, where appropriate, to negotiate with certain of Debtor's landlords regarding the terms of the assumption of certain of the Leases.  In support of the Motion, the Debtor alleges the following facts:

## I.

## RECITALS

A.    The Case was commenced February 3, 2014 ("Petition Date") by the filing, by Debtor, of a voluntary petition.[1]

B.    Debtor is operating its business in conformity with 11 U.S.C. § 1107; and no trustee has been appointed in the Case.

C.    As of the Petition Date, the Debtor had ninety-two (92) operating locations.  A&G is being hired to assist in the negotiation of ninety-eight (98) leases relating to the ninety-two (92) store locations and the other business locations used by the company, such as its corporate office and catering warehouse, etc. ("Stores").

D.    Consultant has substantial experience in and in connection with bankruptcy cases filed all over the United States.  Their experience and expertise is described in the accompanying Declaration of Andrew Margolick ("Margolick Declaration").

E.    Simply described, this Application requests that the Court enter an Order approving the employment of A&G, effective as of the Petition Date.

///

///

///

---

[1] Factual allegations made here are supported by the testimony of Andrew Margolick ("Margolick Declaration"), or matters of which the Court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

## II.

## APPLICABLE LAW

This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are Bankruptcy Code sections 327(a), 330, and 331 and Bankruptcy Rule 2014(a).

Bankruptcy Code section 327(a) provides that the debtor in possession "may employ one or more . . . professional persons, that do not hold or represent an interest adverse to the estate . . . to represent or assist the [debtor in possession] in carrying out [its] duties under [chapter 11]." As stated in the Margolick Declaration, A&G has substantial experience in the analysis of commercial leases in the context of chapter 11. As part of this process, A&G will establish and implement a strategy with the Debtor, negotiating with landlords for both economic and non-economic concessions as well as making recommendations following these negotiations.

There can be no doubt that A&G, and specifically, Mr. Margolick are well-qualified to perform the type of consulting services needed in this Case. As indicated in the concurrent Smith Declaration, Debtor is in need of the consulting services contemplated by the retention of A&G. The burden of managing the Debtor during the nascent stages of the Case require substantial attention from Debtor's corporate officers; moreover, although Debtor's management is extensively experienced in the negotiation of commercial leases, there are simply not enough resources to deal with issues relating to the Leases.

For all of the foregoing reasons, retention of the Consultant upon the terms and conditions set forth in the Services Agreement (Exhibit "1" to the Margolick Declaration) is in the best interests of the Debtor, its estate and its creditors. As indicated in the Margolick Declaration, the work of Mr. Margolick and A&G began the day after the Petition Date. As a result the Application requests that approval of the A&G employment be retroactive to February 4, 2014. It is submitted that the circumstances justify that relief. *See, Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 974 (9th Cir. 1997), citing *Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.)* 40 F.3d 1059, 1062 (9th Cir. 1994).

1

### III.

2

### CONCLUSION

3        Employment of the Consultant should be approved, and made effective from the Petition

4    Date.

5        WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the

6    relief requested here, and ordering such other and further relief as is just and proper.

7

8    Dated: February 12, 2014                    FRIEDMAN LAW GROUP, P.C.

9

10

11                                              By: _____
                                                J. BENNETT FRIEDMAN
12                                              STEPHEN F. BIEGENZAHN
                                                MICHAEL SOBKOWIAK
13                                              [Proposed] Attorneys for Debtor in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF ANDREW MARGOLICK

I, Andrew Margolick, declare and state:

1.      I am a principal of A & G Realty Partners, LLC ("A&G"). I make this Declaration to support the preceding Application To Employ A&G [etc.] ("Application").

2.      Until February 4, 2014, neither I nor anyone at A&G had any relationship with HDOS Enterprises ("Debtor"); consequently, A&G neither holds nor represents any interest adverse to the Debtor. A&G is, in no way, affiliated with the Debtor; it holds no pre-petition claim against the Debtor or its chapter 11 estate ("Estate"); consequently, it is a disinterested person within the meaning of the Bankruptcy Code.

3.      In contemplation of the engagement, I have personally reviewed the Debtor's leases and have consulted with Debtor's management. I have concluded that A&G can bring substantial value to the Debtor and the Estate. With that in mind, A&G has prepared a Real Estate Consulting And Advisory Services Agreement ("Agreement"). The services A&G will render in connection with the Case are set forth in the Agreement. In addition, to the extent requested, I will provide testimony on an as needed basis.

4.      The Agreement is expressly subject to the approval of the Bankruptcy Court. I understand that the compensation of A&G will be subject also to Bankruptcy Court approval.

5.      A&G's principals and management team have over one hundred and fifty (150) years of commercial real estate experience. A&G's principals have extensive experience handling complex real estate transactions and evaluating and selling real estate, leases, and businesses. Their services include asset disposition, lease restructurings and modifications, property valuation analysis, facilitating growth strategies, valuations and acquisitions. Through their numerous years in the real estate business and their many transactions with leading U.S. retailers, A&G has gained an extensive knowledge of the real estate industry. Additionally, A&G has significant experience in the disposition and renegotiation of leases in bankruptcy. A&G's principals have assisted or advised and have been retained in the past as real estate consultants in over one hundred (100) various bankruptcy cases with leasing issues including in the following cases: *In re Borders Group, Inc.*, Case No. 11-10614 (MG) (Bankr.

5

S.D.N.Y.); *In re Blockbuster, Inc.*, Case No. 10-14991 (BRL) (Bankr. S.D.N.Y.); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va.); *In re Linens Holding Co., et al.*, Case No. 08-10832 (CSS) (Bankr. D. Del.).

6.     As part of a diverse business operation, A&G, its parent, subsidiaries, and affiliates each have previously, are currently, and may in the future appear or participate in numerous cases, proceedings, transactions, and engagements involving professional advisors (*e.g.*, attorneys, accountants, investment bankers, and financial consultants) as well as principals (*e.g.*, operating companies, investment funds, or other "financial investors").  In such interactions, A&G, its parent, subsidiaries, and/or affiliates each may act as advisor, agent/consultant (whether on a fee or equity basis), or principal investor or party, and in each such capacity may be a co-advisor, consultant, or principal acting in concert with, or as a counter-party to, such other professional advisors and principals.  Such professional advisors and principals involved in the foregoing interactions with A&G, its parent, subsidiaries, and affiliates may be involved in this proceeding and may represent or be parties in interest in this case.  Except as disclosed herein, none of the interactions between or among A&G, its parent, subsidiaries, and/or affiliates on the one hand, and any of such professional advisors and principal parties on the other hand, are matters directly connected or related to the Trustee, the Debtor, or this case.  Further, except as disclosed here, neither A&G nor its parent, subsidiaries, and/or affiliates have represented, do represent, nor will represent any of such professional advisors or principal parties in connection with the Case.  A&G does not believe any relationship, arrangement, investment, transaction, or engagement with or related to any of the professional advisors or other entities who may be involved in this case will interfere with or impair the services to be rendered to the Debtor by A&G in the Case.

7.     The disclosures identified above are based upon all information reasonably available to A&G as of the date I executed this Declaration.  A&G will, to the extent necessary, supplement this Declaration as may be required by the Bankruptcy Code and Bankruptcy Rules if and when any other relationships exist or are modified such that further disclosure is required.  A&G will implement appropriate internal procedures to protect the

6

interests of the Trustee, the Debtor, and the estate in connection with the representations and relationships set forth above.

8.      A&G and the Debtor entered into the Services Agreement, which will govern the compensation terms between A&G and the Debtor.  Subject to this Court's approval, A&G will provide the services set forth in the Services Agreement for the compensation described therein.

9.      No promises regarding compensation were made to A&G by the Trustee in connection with this case, other than in accordance with the Services Agreement.  Except as may be set forth herein, A&G does not have any agreement with any entity to share any compensation received by A&G in connection with this chapter 11 case other than ordinary course compensation arrangements with employees of, and consultants to, A&G.

Executed February 10, 2014 at Chicago, Illinois.  I declare, under penalty of perjury under the laws of the United States that the foregoing is true and correct as a matter of my personal knowledge; and that, if called as a witness, I can and will testify competently thereto.


*Andrew Margolick*

ANDREW MARGOLICK

7

# Exhibit "1"

## REAL ESTATE CONSULTING AND ADVISORY
## SERVICES AGREEMENT

This Real Estate Consulting and Advisory Services Agreement (this "Agreement") is entered into as of February 10, 2014, (the "Agreement Date") by and between A&G Realty Partners, LLC (the "Consultant" or "A&G") and HDOS Enterprises, (the "Company").

### WITNESSETH:

WHEREAS, the Company has entered into leases (each a "Lease" and collectively the "Leases") of certain real properties (each a "Property" and collectively the "Properties") as set forth on **Exhibit "A"** attached hereto and made a part hereof;

WHEREAS, the Company desires the Consultant to provide those consulting and advisory services described below; and

WHEREAS, it is contemplated that the Company may seek to consummate a restructuring or sale of its assets pursuant to Chapter 11 of the United States Bankruptcy Code in the United State Bankruptcy Court (the "Bankruptcy Court").

**NOW, THEREFORE,** in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Consultant agree as follows:

1.    Consulting and Advisory Services. Consultant shall provide consulting and advisory services (the "Services") as follows:

(i)    Discuss with the Company's representatives the Company's needs, goals, objectives and financial parameters with respect to its Lease portfolio;

(ii)    Negotiate modifications for some or all of the Leases, as directed by the Company, in order to obtain rent reductions, credits, waivers, extensions or other advantageous modifications to the Leases;

(iii)    Prepare and implement a dispositions program, as directed by the Company, that includes (a) soliciting replacement tenants or subtenants; (b) negotiating with landlords as to (i) the assignment or subleasing of Leases; (ii) termination of certain of the Leases and (iii) accepting replacement tenants; and (c) making recommendations to the Company as to accepting, rejecting or modifying any offers or proposals;

(iv)    As directed by the Company, negotiate waivers or reductions of prepetition cure amounts and any claims with respect to any of the

1

Leases pursuant to Section 502(b)(6) of the United States Bankruptcy Code;

(v)    As directed by the Company and its counsel, negotiate with landlords to obtain extensions of time to assume or reject Leases;

(vi)    Assist the Company and its counsel in the documentation of proposed transactions; and

(vii)    Report periodically to the Company regarding the status of the foregoing.

2.    Term. This Agreement shall be for an initial term of six (6) months following the Agreement Date (the "Initial Term"). Thereafter, the term shall be automatically extended for successive thirty (30) day periods until terminated by either party upon at least thirty (30) days prior written notice to the other party. If either party materially fails to perform its obligations in accordance with the terms hereof and does not cure such failure within ten (10) business days of written notice of such default, the other party shall have the right to terminate this Agreement by notice of termination to the non-performing party, effective ten (10) calendar days after the date such notice is given.

3.    Compensation.

As compensation for its Services, the Consultant will receive the following fees described in this Section 3 (individually, a "Fee" and collectively, "Fees").

(a)    Definitions.

"Disposition Agreement" means an assignment, sublease, termination agreement, sales contract or any other document that conveys or terminates the Company's interest in a Lease, including, but not limited to, designation rights; provided, however, that a document that conveys all or substantially all of the Company's assets, including, without limitation, its interest in its Leases, shall not be a Disposition Agreement for the purposes of this Agreement provided that such document is not the result of the Services of A&G For avoidance of doubt, a disposition or Disposition Agreement shall not include or apply to a rejection of a lease under the Bankruptcy Code, it being understood that any fees for a lease rejection shall be limited to the fee set forth in section 3(c)(ii).

"Gross Proceeds" means the total consideration paid by a landlord, tenant or any other party to either terminate or purchase a Lease or any right relating to the Properties and Leases including, but not limited to, any waiver of prepetition and post-petition reconciled cure costs and designation rights.

2

"Local Broker Fees" mean any and all compensation owed to third party brokers retained by Consultant to assist Consultant in providing the Services hereunder.  All such Local Broker Fees shall be paid by Consultant and not by the Company.

"Occupancy Cost" means with respect to a Lease, as of the date immediately prior to the effective date of any Lease amendment, the sum of the remaining base rent including any annual increases, percentage rent, CAM, real property taxes and insurance, rental tax, marketing and merchants association charges, utility charges, HVAC usage charges, trash removal charges, sprinkler usage charges, security charges and other charges payable by the Company under a particular Lease. In the case of percentage rent, such rent will be calculated using sales figures for the 12 months ended at the end of the month prior to the calculation (equitably adjusted if less than 12 months of sales figures are available), and CAM, real property taxes, and insurance will be calculated using the last available full year charge for each item (which may be a calendar year or a lease year, depending upon which is the most recent full year charge available).  In the event rent increases periodically based upon the change in the Consumer Price Index ("CPI"), the assumed annual CPI increase shall be two and one-half percent (2-1/2%).

"Occupancy Cost Savings" means the difference between the original Occupancy Cost and the renegotiated Occupancy Cost for the period from the effective date of a Lease amendment to the end of the Lease term, including, but not limited to, any option term exercised as part of the modification, reduction of rent, reduction of base term, CAM charges, taxes, elimination of percentage rent, conversion to percentage rent, terminations of Leases and reduction in security deposits.  In the case of Lease term extensions, Occupancy Cost Savings shall be calculated for the term of the Lease extension as the difference between the Occupancy Cost as in effect for the period immediately prior to the term extension and the renegotiated Occupancy Cost for the extended term.  If a Lease modification involves changing base rent to percentage rent only, Occupancy Cost Savings will be determined using the sales figures for the last full twelve (12) months available. Occupancy Cost Savings will also include any Occupancy Cost amounts agreed to be paid on behalf of the Company by any Lease guarantor or other third party.

  (b) <u>Lease Modification Fees</u>.

    (i) For each successful (i.e. a modification that results in Occupancy Cost Savings) renegotiation of the monetary terms of any Lease, Consultant's Fee shall be one thousand dollars ($1,000) plus seven and one half percent (7.5%) of Occupancy Cost Savings for the remainder of the current term of the Lease and any term extension and/or option term exercised as part of the Lease renegotiation.  In no event shall any Fee be payable with respect to option terms that are exercised subsequent to the execution of such Disposition Agreement

3

unless said option terms or Lease payments have been modified as result of the Consultant's actions hereunder.

(ii)   For renegotiating a non-monetary provision of a Lease, including but not limited to Company's unilateral right to early termination of a Lease, Consultant's Fee shall be $500 per transaction.

(iii)  In addition to the Fees set forth in <u>Subsections 3 (b)(i)</u> and <u>(ii)</u> above, if any Lease renegotiation results in the payment of monetary consideration to Company for executing a Lease modification, then Consultant shall earn a Fee in the amount equal to seven and one half percent (7.5%) of such consideration paid to Company.

(iv)   If the Consultant negotiates more than one type of Lease Modification (i.e. monetary, non-monetary, consideration), Consultant shall be entitled to any applicable types of fees in accordance with (i), (ii) and (iii) above.

(c)    <u>Reductions in Bankruptcy Claims (if applicable).</u>

Fees for any reduction in bankruptcy claims, if directed by the Company to perform such Services, shall be calculated as follows:

(i)    For any Lease assumed and assigned by the Company, if the amount required to be paid to the landlord to cure defaults existing at the time of assumption is reduced below the cure amount that the Company reasonably acknowledges or the Bankruptcy Court determines is owing, the Consultant will receive a Fee for the waiver or reduction of the cure amount in an amount equal to five percent (5%) of the total amounts so reduced or waived.

(ii)   For any Lease rejected by the Company, if the landlord agrees to reduce or waive the claim it could reasonably assert under Bankruptcy Code §502(b) (6) or otherwise, the Consultant will receive a Fee in an amount equal to five percent (5%) of the net savings that otherwise would have been payable to the landlord in the Company's bankruptcy case. For avoidance of doubt, except for a Fee based on net savings based on reduction or waiver of a claim as set forth herein, no Fee shall be earned upon a rejection of a lease in connection with a Bankruptcy Case.

(d)    <u>Extensions of Time to Assume or Reject Leases:</u>  If directed by the Company to negotiate with landlords to obtain extensions of time to assume or reject Leases, Consultant shall earn a Fee in the amount of $250 for each such fully

4

executed and effective consents resulting in additional time for Company to decide to assume or reject Leases.

(e)     Dispositions.  In the event that the Company elects to sell or assign an individual Lease, upon the entering into of any Disposition Agreement regarding any applicable Lease listed on Exhibit A, the Consultant shall be entitled to a fee equal to seven and a half percent (7.5%) of the Gross Proceeds realized by the Company as a result of the sale. Notwithstanding the foregoing and for avoidance of ambiguity, no fee set forth in this subsection shall apply in connection with (x) a sale of all or substantially all of the assets or Leases of the Company or any division of the Company under section 363 or otherwise or (y) a transaction in which the consideration received is a credit bid from an existing secured lender; provided that no such actions were the result of the Services of A&G.

(f)     Timing of Payments:  All fees shall be earned upon the later of (1) the execution of an agreement between the landlord or any other third party and the Company in which the Company obtains a lease modification, disposition or other type of benefit of the Services provided herein or (2) entry of an Order approving the assumption of the specific lease. The fees shall be paid pursuant to the procedure set forth herein.  Within ten (10) business days after the Lease is assumed or as otherwise ordered by the Bankruptcy Court, Consultant shall provide an invoice for all earned Fees to Company.  The Company shall then have the election of either (1) paying the Fee in full; or (2) paying 50% of the Fee to Consultant on the Effective Date of the confirmed Plan of Reorganization and the balance of such Fees in six (6) equal monthly installments from the Effective Date.  Such election shall be made in the sole and absolute discretion of the Company based upon the business judgment of the Company and the cash availability to the Company.

4.     Expenses and Disbursements.  Other than payments owed to Local Brokers retained by A&G, A&G shall not be responsible for any transactional costs and/or legal expenses incurred by it or the Company in connection with the Services.  The Company shall reimburse A&G for A&G's reasonable out of pocket expenses (including, but not limited to travel, marketing, attorney and consultant fees) incurred and in connection with the Services, provided that any such expense in excess of $500.00 shall have been pre-approved by the Company. The Company agrees to reimburse A&G for expenses arising from A&G being requested or required to respond or testify in any legal or regulatory proceeding relating to or arising out of this Agreement.  Any reimbursable expenses shall be paid to A&G within ten (10) days after delivering to Company an invoice therefore.

5.     Bankruptcy Court Approval.  The Company will promptly use its best efforts to seek a final order of the Bankruptcy Court authorizing A&G as the Company's exclusive real estate adviser for the Properties set forth on Exhibit A (the "Order") pursuant to, and subject to the

standards of review set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code), nunc pro tunc to the date Consultant commences Services as defined in this Agreement. Consultant shall cooperate with Company's counsel as may be reasonably necessary to complete the employment application to be submitted in the case. The Company will provide the Consultant with a copy of the pleadings requesting retention of the Consultant prior to submission to the Bankruptcy Court and advise the Consultant of any objection or hearing pertaining to Consultant's retention. The retention application and any order authorizing A&G's retention must be acceptable to A&G. If such Order is not obtained within 60 days from the Agreement Date, Consultant shall have the right to terminate this Agreement at any time thereafter. If an acceptable Order is not obtained authorizing A&G's employment and fees as set forth herein, the Company agrees to amend the employment application in conjunction with and the approval of A&G and request a hearing to review such application.

6.    Consultant and Company Covenants.

    (a)    In consideration of this Agreement, the Consultant agrees to utilize reasonable efforts and diligence to achieve the purpose of this Agreement.

    (b)    The Company and the Consultant shall deal with each other fairly and in good faith so as to allow bother parties to perform their duties and earn the benefit of this Agreement.

    (c)    The Company shall make available to the Consultant all appropriate personnel and information concerning the Leases necessary for the performance of the Consultant's obligations hereunder, including landlord contact information, copies of Leases, Lease abstracts and a list of current rent, taxes and other Lease charges, and such other information as Consultant reasonably requests and which may be in Company's possession or control. All information provided by the Company shall be materially accurate and complete at the time it is furnished and the Company shall, as soon as it becomes aware of any inaccuracy or incompleteness in any information then or later provided to the Consultant, promptly advise the Consultant in writing of such inaccuracy or incompleteness and correct the same. In rendering its services hereunder, A&G will be using and relying on the information provided by the Company and shall have no obligation to independently verify the information. The Company understands and agrees that any inaccuracies in the information may affect the Services provided and/or lead to a delay in the provision of the Services.

    (d)    A&G may use the Company's name and logo to identify Company as one of A&G's clients.

    (e)    Subject to approval by the Court, both parties hereby represent that they have all requisite power and authority to enter into this Agreement and that this

Agreement has been validly authorized by all necessary corporate action and will constitute a legal, valid and binding agreement of the Company and the Consultant. Both parties represent that this Agreement does not and will not violate any applicable law or conflict with any agreement, instrument, judgment, order or decree to which it is a party or by which it is bound. Furthermore, both parties represent and agree that they will comply with all applicable laws, rules, regulations and orders during the term of this Agreement in performing their obligations hereunder. Both parties represent that the person signing this Agreement on its behalf has the requisite authority to enter into this Agreement and can bind the respective party.

(f)     The Company and the Consultant acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

(g)     The Company and Consultant recognize and acknowledge that the Services to be provided by the Consultant pursuant to this Agreement are, in general, transactional in nature, and, except as may be required pursuant to <u>Section 4</u>, the Consultant will not be billing the Company by the hour or maintaining time records. It is agreed that the Consultant is not requested or required to maintain such time records and that its compensation will be fixed on the percentages set forth herein.

7.     <u>Approval of Contracts</u>.  All of the terms and conditions of each and every Lease assignment, sublease, termination agreement or other Disposition Agreement involving a Property or Lease proposed by Consultant shall be subject to the Company's approval, which approval may be withheld by Company in its sole and absolute discretion.

8.     <u>Binding Effect</u>. This Agreement shall be binding upon the Company and any successors and permitted assignees, including but not limited to, a Chapter 11 or 7 trustee (if permitted by the Court), examiner or liquidator or a purchaser of designation rights. If the Company or any of its assets referenced herein are sold or if one of the Company's lenders or creditors purchases the Company or any of the assets referenced herein, such party shall comply with the terms of this Agreement and this Agreement shall be binding upon such parties. Furthermore, the Company hereby agrees to do everything in its power to ensure that such future purchasers, successors and transferees abide by the terms of this Agreement, including but not limited to, the inclusion of a provision to that effect in any purchase or other sale or transfer agreement relating to the Company, the Properties, the Leases or any asset referenced herein.

9.     <u>Assignments</u>. Neither party may assign any of its rights or responsibilities under this Agreement without first receiving the prior written consent of the other party, which consent may be withheld in its sole discretion. Furthermore, unless expressly provided herein, this Agreement is not intended to confer any rights or remedies upon any person not a party to this Agreement.

7

10.   Exclusive.  The Consultant shall have the sole and exclusive authority to perform all Services outlined herein.  All relevant inquiries regarding the Leases made to the Company, its representatives or related parties to the Company shall be directed to the Consultant.  The Company acknowledges and agrees that the Consultant and its affiliated entities may provide the same or similar services as those referenced herein to other third persons or entities, including but not limited to, purchasers of the Company, its assets, its leases and/or its designations rights and that any such engagement shall not constitute or be deemed to be a violation of or conflict with this Agreement; provided however that such engagement does not violate the terms of and the obligations set forth hereunder.

11.   Indemnification.   To the extent allowable by law, the Company and its estate shall indemnify and hold the Consultant and its affiliates and their respective officers, directors, employees, agents and independent contractors, harmless from and against all claims, demands, penalties, losses, liabilities or damages, including without limitation, reasonable attorney's fees and expenses, (collectively the "Claims") directly or indirectly asserted against, resulting from, or related to the Services or actions of A&G taken under this Agreement, (including, but not limited to any covenants, representations or warranties contained herein) or in any written agreement entered into in connection herewith unless such Claims arise as the result of the Consultant's gross negligence or willful misconduct.

12.   Limitation on Liability.  A&G shall not be responsible for any indirect, incidental, consequential or punitive damages, loss of profits, damage to reputation or business or any other special damages arising under or by reason of this Agreement or the Services or any act or omission hereunder.  Furthermore, A&G shall not be liable to the Company if it is unable to perform its responsibilities hereunder as a result of events beyond its control.

13.   Independent Contractor.  Both parties acknowledge and agree that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between the Company and the Consultant.  The Consultant shall provide the Services as an independent contractor and not as an employee, agent, partner or joint venture of the Company.

14.   Insider Trading.  A&G acknowledges its understanding that, under Rule 10b-5 of the Securities Exchange Act of 1934, a person or entity who becomes aware of material information relating to a company which has not been publicly disclosed may be prohibited from trading in such company's securities, or directly or indirectly disclosing such information to any person so that such person may trade in such company's securities.

15.   Confidential Information.  A&G shall hold the Confidential Information (as hereinafter defined) in confidence and shall never, for a period of one year from the termination date of the Agreement do any of the following or authorize any other person or entity to do the following:  (a) disclose, directly or indirectly, to any person or entity, or sell, license, or otherwise exploit any Confidential Information or (b) outside of the scope of the engagement

8

hereunder, use for any purpose or copy or make lists of, any Confidential Information, except upon the prior written consent of Client. A&G shall take all reasonable precautions consistent with its own practice for maintaining the confidentiality of its own information against disclosure of Confidential Information to third parties. Any Confidential Information in A&G's possession shall be delivered promptly to Client upon the earlier of (i) termination of this Agreement or (ii) upon request by Client. Notwithstanding the foregoing, the Consultant may retain copies of the Confidential Information as reasonably required to comply with legal, regulatory or audit requirements or comply with its internal records policies and procedures. For the purposes of this Section 15, "Confidential Information" shall mean information and materials in written, oral, magnetic, photographic, optical or any other form, whether now existing or developed or created during A&G's engagement hereunder (whether or not developed or created by Company), (1) disclosed by Company to A&G including any information imparted to A&G by third parties on behalf of the Company, (2) not generally known to the public or within the industries or trades in which Company competes, and (3) which (i) relate to Company's operations or business or (ii) are under Company's control from any other person or entity and which Company is obligated to treat as confidential or proprietary. The term "Confidential Information" does not include information which (i) is already in the Consultant's possession, provided that such information is not known by such party to be subject to another confidentiality agreement with, or other obligation of secrecy to, the Company or (ii) becomes generally available to the public other than as a result of disclosure by the Consultant, or (iii) becomes available to the Consultant on a non-confidential basis from a source other than the Company, provided that such source is not known by the Consultant to be bound by a confidentiality agreement with, or other obligation of secrecy to, the Company or (iv) is independently developed by the Consultant without use of or reference to the Information, as shown by regularly kept business records of the Consultant.

16.    <u>Survival of Fee.</u>

        (i)      In the event the Company, or its successors or assigns, including but not limited to a Chapter 11 or 7 trustee, examiner or liquidator, enters into any transaction with a landlord of a Property during the course of the Bankruptcy proceeding, the result of which would entitle A&G to a Fee pursuant to this Agreement, then in that event, A&G shall be entitled to its Fee pursuant to the terms of this Agreement.

        (ii)     So long as A&G has conducted documented negotiations with a landlord or other party prior to the Termination Date and an agreement with such landlord or other party is entered into after the Termination Date, which agreement ultimately leads to the consummation of a transaction(s), the result of which would otherwise have entitled A&G to a fee pursuant to this Agreement, then in that event, A&G shall be entitled to a fee for such transaction(s) in accordance with the terms of this Agreement unless the modification with such landlord results in a

change greater than five percent (5%) of the proposed modification by Consultant. A&G shall provide to the Company a written list of such parties with whom it had documented negotiations and the terms of the proposed modification with such landlord within ten (10) business days after termination of this Agreement.

17.    <u>Disclosures; Reports</u>.  Any information, advice, recommendation or other content of any reports, presentations or other communications that the Consultant provides under the terms of this Agreement are solely for the benefit of the Company and may not be disclosed to any other party without the prior written consent of the Consultant.  All opinions and advice (written or oral) given by the Consultant to the Company in connection with this Agreement are intended solely for the benefit and use of the Company and no such opinion or advice shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose, nor shall any public references to the Consultant be made without the prior written consent of the Consultant.  If the Company shall receive a subpoena, summons or court order relating to A&G or the Services provided hereunder, the Company shall immediately notify A&G so that A&G may obtain a protective order for such information.

18.    <u>Intellectual Property</u>.  A&G may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder.  Notwithstanding the delivery of any reports to the Company by A&G, A&G shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services.

19.    <u>Notices</u>.  Unless otherwise expressly provided herein or waived in writing by the party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand, or sent by email to the applicable email address; (ii) three days after deposit in the United States mail by certified mail, return receipt requested; or (iii) one day after delivery to a commercial overnight courier, and addressed to the parties as follows:

**IF TO THE COMPANY:**    HDOS Enterprises
5942 Priestly Drive
Carlsbad, CA  92008
Attn:  Dan Smith
Title:  CEO
Tel:    (760) 930-0456
E-mail:  dans@hotdogonastick.com

**WITH A COPY TO:**

10

Friedman Law Group, P.C.
1900 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Attn:   J. Bennett Friedman, Esq.
Tel:    (310) 552-8210
E-mail:  jfriedman@jbflawfirm.com

**IF TO THE CONULTANT:**        A&G Realty Partners, LLC
525 West Monroe Street, Suite 2330
Chicago, IL  60661
Attn:   Andrew Margolick
Tel:    312-454-2857
E-mail: Andrew@agrealtypartners.com

and

A&G Realty Partners, LLC
445 Broad Hollow Road, Suite 410
Melville, NY 11747
Attn:   Emilio Amendola
Tel:    631-465-9506
E-mail: emilio@agrealtypartners.com

20.     <u>Early Termination</u>.  If either party materially fails to perform its obligations in
accordance with the terms hereof, and does not cure such failure within ten (10) business days
of written notice of such default, the other party shall have the right to terminate this
Agreement by notice of termination to the non-performing party, effective ten (10) calendar
days after the date such notice is given. Additionally, if for any reason either party becomes
unable to perform its duties as a result of a legal, contractual or regulatory restriction, such
party shall have the right to terminate this Agreement. The terms of this Agreement and any
rights or obligations incurred or accrued by either party hereto prior to termination shall
survive termination of this Agreement.

21.     <u>Waivers and Amendments</u>.  Waiver by either party of any default by the other party
shall not be deemed a waiver of any other default.  No provision of this Agreement shall be
deemed waived, amended, or modified by either party, unless it is in writing and signed by
both parties.

22.     <u>Severability</u>.  If any provision, or any portion of any provision, contained in this
Agreement is held unenforceable, then it shall, to that extent alone, be deemed omitted and
this Agreement shall be construed as if such unenforceable provision had never been
contained herein.

11

23.  <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof.  All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

24.  <u>Counterpart Execution/Facsimile and Electronic Signatures</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.  Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

25.  <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of California without reference to its conflicts of laws rules. Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this Agreement or the Consultant's services hereunder, shall be subject to the exclusive jurisdiction of the United States Bankruptcy Court, Central District of California.

26.  <u>Waiver of Jury Trial</u>. Each of the parties unconditionally waives the right to a jury trial in connection with any claim arising out of or related to this Agreement.

27.  <u>Headings</u>. The section headings and use of defined terms in the singular or plural tenses in this Agreement are solely for the convenience of the parties.

28.  <u>No Presumptions</u>. This Agreement by shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

WITNESS WHEREOF, the Company and the Consultant have executed and delivered this Agreement as of the date first above written.

**HDOS Enterprises**                    **A&G Realty Partners LLC**

By: _____                    By: ___

_____

12

Name: Dan Smith                              Name: ___Andrew Margolick

Title: CEO                                   Title: Principal

**Exhibit**
**"A"**

PROPERTIES

| Store # | Mall Name | Address of Property | Name & address of the lessor | Name and address of Owner if not Lessor | Lease Beginning Date | Lease expiration date |
|---|---|---|---|---|---|---|
| 0011 | Muscle Beach | 1633 Ocean Front<br>Santa Monica, CA 90401<br>County: Los Angeles | City of Santa Monica<br>1685 Main Street, Rm 210<br>Santa Monica, CA 90401<br>(310) 458-8310 | | 8/1/2010 | 6/30/2020 |
| 0015 | Fashion Place Mall | 6191 South State, #357<br>Murray, UT 84107<br>County: Salt Lake | General Growth Properties | GGP Limited Partnership<br>Fashion Place, LLC<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606<br>(410) 992-6215 | 5/22/2008 | 5/31/2018 |
| 0016 | Westminster Mall | 2111 Westminster Mall<br>Westminster, CA 92683<br>County: Orange | Simon Property Group | The Retail Property Trust<br>M. S. Management Associates,<br>Inc.<br>225 West Washington Street<br>Indianapolis, IN 46204-3438 | 1/1/2013 | 12/31/2017 |
| 0018 | Culver City | 6000 S. Sepulveda Blvd #2286<br>Culver City, CA 90230<br>County: Los Angeles | Westfield | FOX HILLS MALL LP<br>11601 WILSHIRE BOULEVARD,<br>11TH FLOOR<br>LOS ANGELES, CA 90025<br>(310) 390-7833 | 10/6/2009 | 9/30/2019 |
| 0019 | Coronado Center | 6600 Menaul Boulevard, NE, Ste<br>#40-6<br>Albuquerque, NM 87110<br>County: Bernalillo | General Growth Properties | CORONADO CENTER LLC<br>CORONADO CENTER<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606<br>(505) 881-2700 Ext. 0000 | 3/1/2013 | 2/28/2023 |
| 0021 | Santa Maria Town Center | 197 Santa Maria Town Center East<br>Santa Maria, CA 93454 | ERGS XIV REO OWNER, L.L.C.<br>ATTN: ASSET MANAGER | yes | 1/1/2006 | 12/31/2018 |

| ID | Name | Address | Landlord | Entity | "yes" | Start | End |
|---|---|---|---|---|---|---|---|
| | | County: Santa Barbara | 6011 CONNECTION DRIVE IRVING, TX 75039 | | | | |
| 0024 | Parkway Plaza | 713 Parkway Plaza El Cajon, CA 92020 County: San Diego | Starwood Retail P.O. BOX 844767 LOS ANGELES, CA 90084-4767 | STAR-WEST PARKWAY MALL LP | | 6/1/2013 | 5/31/2020 |
| 0026 | Glendale Galleria | 1146 Glendale Galleria Glendale, CA 91210 County: Los Angeles | General Growth Properties | GLENDALE II MALL ASSOCIATES LLC GLENDALE GALLERIA 110 N. WACKER DRIVE CHICAGO, IL 60606 | | 11/1/2005 | 10/31/2015 |
| 0029 | Vintage Fair Modesto | 3401 Dale Road, #443 Modesto, CA 95356 County: Stanislaus | MACERICH VINTAGE FAIRE LP 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA 90407 | | yes | 6/1/2011 | 5/31/2018 |
| 0032 | Puente Hills Mall | 1600 S. Azusa Avenue, Unit #1696 City of Industry, CA 91748-1617 County: Los Angeles | Glimcher | PUENTE HILLS MALL, LLC P.O. BOX 602062 CHARLOTTE, NC 28260-2062 | | 7/4/2007 | 7/31/2017 |
| 0036 | The Oaks Shopping Center | 382 W. Hillcrest Drive, Suite 6 Thousand Oaks, CA 91360 County: Ventura | MACERICH OAKS LLC 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA 90407 | | yes | 11/1/2007 | 1/31/2018 |
| 0037 | The Meadows Mall | 4300 Meadows Lane, #5010 Las Vegas, NV 89107 | General Growth Properties | GGP MEADOWS MALL L.L.C. 110 N. WACKER DRIVE | | 11/1/2005 | 10/31/2015 |

| | County: Clark | | CHICAGO, IL 60606<br>(702) 878-3331 | | |
| --- | --- | --- | --- | --- | --- |
| 0041 | The Shops at Mission Viejo | 1005 The Shops at Mission Viejo, Sp. VC-05<br>Mission Viejo, CA 92691<br>County: Orange | Simon Property Group<br>MISSION VIEJO ASSOCIATES LP<br>M. S. Management Associates, Inc.<br>225 West Washington Street<br>Indianapolis, IN 46204-3438<br>(317) 636-1600 | 2/1/2013 | 1/31/2018 |
| 0046 | Fashion Show | 3200 Las Vegas Blvd., Space #3150<br>Las Vegas, NV 89109<br>County: Clark | General Growth Properties<br>FASHION SHOW MALL<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606<br>(702) 369-0704 | 12/1/2013 | 1/31/2015 |
| 0047 | Clackamas Town Center | 12000 S.E. 82nd Avenue, Space # L107<br>Happy Valley, OR 97086<br>County: Clackamas | General Growth Properties<br>CLACKAMAS MALL L.L.C.<br>CLACKAMAS TOWN CENTER<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606<br>(503) 653-7251 | 3/1/2007 | 12/31/2016 |
| 0049 | South Bay Pavilion | 463 Carson Mall<br>Carson, CA 90746<br>County: Los Angeles | VCG-SOUTHBAY PAVILION LLC<br>11611 SAN VICENTE BLVD<br>SUITE 1000<br>LOS ANGELES, CA 90049<br>YES | 1/1/2012 | 1/31/2022 |
| 0052 | Westfield Plaza Bonita | 3030 Plaza Bonita Road, Space FC-9<br>National City, CA 91950<br>County: San Diego | Westfield<br>PLAZA BONITA LLC<br>11601 WILSHIRE BOULEVARD,<br>11TH FLOOR<br>LOS ANGELES, CA 90025<br>(619) 267-2850 | 3/20/2008 | 6/30/2018 |

| No. | Name | Address | Manager | Landlord | Start | End |
|---|---|---|---|---|---|---|
| 0054 | Santa Rosa Plaza | 2103 Santa Rosa Plaza, Santa Rosa, CA 95401, County: Sonoma | Simon Property Group | EMI SANTA ROSA LIMITED PARTNERSHIP M. S. Management Associates, Inc. 225 West Washington Street Indianapolis, IN 46204-3438 | 4/1/2013 | 3/31/2018 |
| 0057 | Serramonte Center | 80-B Serramonte Center, Daly City, CA 94015, County: San Mateo | Jones Lang LaSalle | DALY CITY SERRAMONTE CENTER 3424 PEACHTREE ROAD, SUITE 300 ATLANTA, GA 30326 (415) 256-5420 | 9/1/2007 | 8/31/2017 |
| 0058 | Windward Mall | 46-056 Kamehameha Highway, Space #FC-2, Kaneohe, HI 96744, County: Hawaii | Jones Lang LaSalle | THE TRUSTEES OF THE ESTATE BERNICE PAUAHI BISHOP SUITE 200, KAWAIAHA'O PLAZA 567 SOUTH KING STREET HONOLULU, HI 96813 (808) 922-0588 | 11/1/2009 | 10/31/2019 |
| 0059 | Eastridge Mall | 601 SE Wyoming Boulevard, #187 Casper, WY 82609 County: Natrona | General Growth Properties | PDC-EASTRIDGE MALL L.L.C 110 N. WACKER DRIVE CHICAGO, IL 60606 | 11/1/2005 | 10/31/2015 |
| 0061 | Brea Mall | 2153 Brea Mall, Brea, CA 92821 County: Orange | Simon Property Group | THE RETAIL PROPERTY TRUST M. S. Management Associates, Inc. 225 West Washington Street Indianapolis, IN 46204-3438 (714) 990-2732 | 1/1/2013 | 12/31/2017 |
| 0063 | Westfield Palm Desert | 72-840 Highway 111, Space 357 | Westfield | WEA PALM DESERT LP-WESTFIELD | 1/1/2013 | 12/31/2018 |

| Store # | Mall Name | Address | County | Manager | Landlord | Lease Start | Lease End |
|---|---|---|---|---|---|---|---|
|  |  | Palm Desert, CA 92260 | Riverside |  | 11601 WILSHIRE BOULEVARD, 11TH FLOOR LOS ANGELES, CA 90025 (760) 346-2121 |  |  |
| 0064 | Capitola Mall | 1855 41st Avenue, Space #R-2 Capitola, CA 95010 | Santa Cruz |  | THE MACERICH PARTNERSHIP LP 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA 90407 (415) 424-8383 | 4/1/2004 | 3/31/2014 |
| 0067 | The Boulevard Mall | 3532 Maryland Parkway Las Vegas, NV 89169 | Clark | CBRE | BOULEVARD MALL, LLC SANSONE COMPANIES 3528 S. MARYLAND PKWY LAS VEGAS, NV 89169 (702) 735-8268 | 1/1/2013 | 1/31/2014 |
| 0069 | Westfield Horton Plaza | 461 Horton Plaza San Diego, CA 92101 | San Diego | Westfield | HORTON PLAZA LLC 11601 WILSHIRE BOULEVARD, 11TH FLOOR LOS ANGELES, CA 90025 | 3/1/2006 | 1/31/2016 |
| 0070 | Burbank Town Creeter | 201 East Magnolia Boulevard, #383 Burbank, CA 91501 | Los Angeles | CBRE | BURBANK MALL ASSOCIATES LLC CROWN REALTY & DEVELOPMENT INC 18201 VON KARMAN AVE, SUITE 950 IRVINE, CA 92612 (818) 566-8556 | 9/1/2011 | 8/31/2014 |
| 0071 | The Galleria at South Bay | 1815 Hawthorne Boulevard, #309 Redondo Beach, CA 90278 | Los Angeles | Forest City | TUSAR INC & DND NEFFERSON CO TERMINAL TOWER 50 PUBLIC SQUARE, SUITE 1360 CLEVELAND, OH 44113-2267 | 9/1/2011 | 8/31/2014 |

| ID | Name | Address | Party | Landlord | Start | End |
|---|---|---|---|---|---|---|
| 0073 | Southland Mall | 13 Southland Mall Dr. Hayward, CA 94545 County: Alameda | Rouse Properties | SOUTHLAND MALL, L.P. 110 N. WACKER DRIVE CHICAGO, IL 60606 (510) 782-5050 | 11/1/2005 | 10/31/2015 |
| 0074 | Montebello Town Center | 1644 Montebello Town Center Montebello, CA 90640 County: Los Angeles | Simon Property Group | MONTEBELLO TOWN CENTER INVESTORS P.O. BOX 748283 LOS ANGELES, CA 90074-8283 (323) 722-1776 Ext. 0000 | 10/1/2012 | 9/30/2017 |
| 0075 | Montclair Plaza | 2022 Montclair Plaza Lane Montclair, CA 91763 County: San Bernardino | Cushman & Wakefield | 5060 MONTCLAIR PLAZA HOLDINGS C/O SPINOSO MGMT GROUP P.O. BOX 956415 St. Louis, MO 63195 (213) 955-5100 | 4/1/2004 | 1/31/2015 |
| 0076 | Fashion Fair | 521 East Shaw Avenue, #101 Fresno, CA 93710 County: Fresno | | MACERICH FRESNO LIMITED PARTNERSHIP 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA 90407 | 5/1/2013 | 4/30/2021 |
| 0078 | Westfield North County | 200 Via Rancho Parkway, Space #435 Escondido, CA 92025 County: San Diego | Westfield | NORTH COUNTY FAIR LP 11601 WILSHIRE BOULEVARD, 11TH FLOOR LOS ANGELES, CA 90025 | 7/1/2010 | 6/30/2015 |
| 0082 | Plaza Camino Real | 2525 El Camino Real, Space #262 | Westfield | PLAZA CAMINO REAL | 10/25/2013 | 10/31/2014 |

| No. | Name | Address | Landlord | Notice Address | Start | End |
|---|---|---|---|---|---|---|
| | | Carlsbad, CA 92008 County: San Diego | | 11601 WILSHIRE BOULEVARD, 11TH FLOOR LOS ANGELES, CA 90025 | | 2/28/2018 |
| 0085 | Los Cerritos Center | 121 Los Cerritos Center Cerritos, CA 90703 County: Los Angeles | MACERICH CERRITOS LLC 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA 90407 (562) 860-0341 | | 3/13/2008 | |
| 0086 | Metro Center | 9617 N. Metro Parkway, Ste #2044 Phoenix, AZ 85051 County: Maricopa | CARLYLE ER METRO, LLC P.O. BOX 28087 NEW YORK, NY 10087-8087 | yes | 1/1/2007 | 12/31/2016 |
| 0087 | Newpark Mall | #2073 NewPark Mall Newark, CA 94560 County: Alameda | Rouse Properties | NEWPARK MALL LP 1114 AVENUE OF THE AMERICAS, SUITE 2800 NEW YORK, NY 10036 | 2/1/2013 | 1/31/2018 |
| 0088 | The Mall at Victor Valley | 14440 Bear Valley Road, Suite #725-B Victorville, CA 92392 County: San Bernardino | MACERICH VICTOR VALLEY LLC 401 WILSHIRE BOULEVARD, SUITE 700 SANTA MONICA, CA 90407 | | 12/1/2010 | 11/30/2020 |
| 0089 | Solano Town Center Fair | 1350 Travis Boulevard, Ste 1515 Fairfield, CA 94533 County: Solano | Starwood Retail | Star-West Solano P.O. BOX 844767 LOS ANGELES, CA 90084-4767 | 2/1/2011 | 1/31/2016 |

| Code | Name | Address | Management | Date | Date |
|---|---|---|---|---|---|
| 0090 | Anchorage | 320 West 5th Street, Sp #406<br>Anchorage, AK 99501<br>County: Anchorage | Simon Property Group | NORTHWESTERN SIMON, INC.<br>M. S. Management Associates, Inc.<br>225 West Washington Street<br>Indianapolis, IN 46204-3438 | 2/1/2008 | 1/31/2018 |
| 0096 | Westfield Mainplace | 2800 North Main Street, #584<br>Santa Ana, CA 92705<br>County: Orange | Westfield | MAINPLACE SHOPPINGTOWN LLC<br>11601 WILSHIRE BOULEVARD, 11TH FLOOR<br>LOS ANGELES, CA 90025 | 10/1/2007 | 1/31/2015 |
| 0098 | Galleria at Tyler | 1120 Galleria at Tyler, #F-6A<br>Riverside, CA 92503<br>County: Riverside | General Growth Properties | TYLER MALL LIMITED PARTNERSHIP<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606 | 11/1/2005 | 10/31/2015 |
| 0100 | Northridge Mall | 1590 Northridge Mall<br>Salinas, CA 93906<br>County: Monterey | Starwood Retail | NORTHRIDGE OWNER LP<br>P.O. BOX 844767<br>LOS ANGELES, CA 90084-4767 | 4/1/2012 | 3/31/2014 |
| 0101 | Moreno Valley Mall | 22500 Town Circle, #2145<br>Moreno Valley, CA 92553<br>County: Riverside | Cushman & Wakefield | 2250 TOWN CIRCLE HOLDINGS LLC<br>C/O SPINOSO MGMT GROUP<br>P.O. BOX 956393<br>St. Louis, MO 63195-6393 | 12/1/2006 | 11/30/2016 |
| 0102 | Sierra Vista | 1050 Shaw Avenue, #1054<br>Clovis, CA 93612<br>County: Fresno | Land Value Management | LANDVALUE 77, LLC<br>SIERRA VISTA MALL<br>1050 SHAW AVENUE, SUITE 1075 | 11/1/2011 | 10/31/2014 |

| No. | Name | Address | Landlord | Landlord Address | Start | End |
|---|---|---|---|---|---|---|
| 0103 | Westfield Valencia Town Center | 24201 West Valencia Boulevard, Suite #106 Valencia, CA 91355 County: Los Angeles | Westfield | VALENCIA TOWN CENTER VENTURE LP 11601 WILSHIRE BOULEVARD, 11TH FLOOR LOS ANGELES, CA 90025 CLOVIS, CA 93612 | 2/1/2013 | 1/31/2014 |
| 0105 | Stonestown Galleria | 3251 20th Ave., Space #250-J San Francisco, CA 94132 County: San Francisco | General Growth | STONESTOWN SHOPPING CENTER LP 110 N. WACKER DRIVE CHICAGO, IL 60606 | 11/1/2005 | 10/31/2015 |
| 0108 | Westfield Oakridge | 925 Blossom Hill Rd, #1617 San Jose, CA 95123 County: Santa Clara | Westfield | OAKRIDGE MALL LLC 11601 WILSHIRE BOULEVARD, 11TH FLOOR LOS ANGELES, CA 90025 | 7/1/2013 | 7/31/2016 |
| 0109 | Plaza West Covina | 803 Plaza Drive West Covina, CA 91790 County: Los Angeles | Starwood Retail | PLAZA WEST COVINA LP P.O. BOX 844824 LOS ANGELES, CA 90084-4824 | 3/1/2013 | 2/28/2022 |
| 0112 | Valley Plaza | 2701 Ming Avenue, #F-9 Bakersfield, CA 93304 County: Kern | General Growth Properties | VALLEY PLAZA MALL, LP 110 N. WACKER DRIVE CHICAGO, IL 60606 | 9/1/2013 | 8/31/2014 |
| 0113 | Westfield Santa Anita | 400 South Baldwin, 803-L Arcadia, CA 91007 | Westfield | SANTA ANITA SHOPPINGTOWN LP 11601 WILSHIRE BOULEVARD, 11TH FLOOR | 10/1/2004 | 6/30/2014 |

| # | Name | Property Address | Landlord | Landlord Address | Start | End |
|---|---|---|---|---|---|---|
| | | County: Los Angeles | | LOS ANGELES, CA 90025 | | |
| 0116 | Great Mall | 610 Great Mall Drive, Milpitas, CA 95035, County: Santa Clara | Simon Property Group | THE MILLS, 5425 WISCONSIN AVENUE, CHEVY CHASE, MD 20815 | 1/1/2004 | 12/31/2013 MTM |
| 0118 | Westfield Topanga | 6600 Topanga Canyon Blvd., 1098A. Westfield, Canoga Park, CA 91303, County: Los Angeles | Westfield | WESTFIELD TOPANGA OWNER LP, 11601 WILSHIRE BOULEVARD, 11TH FLOOR, LOS ANGELES, CA 90025 | 10/6/2006 | 6/30/2017 |
| 0120 | Westside Pavillion | 10800 W. Pico Blvd., Los Angeles, CA 90064, County: Los Angeles | MACERICH WESTSIDE PAVILION PROPERTY LLC, 401 WILSHIRE BOULEVARD, SUITE 700, SANTA MONICA, CA 90407 | | 2/1/2011 | 1/31/2014 |
| 0121 | Arden Fair | 1868 Arden Way, #1104, Sacramento, CA 95833, County: Sacramento | Macerich | ARDEN FAIR ASSOCIATES, L.P., DEPT 2596-7000, LOS ANGELES, CA 90084-2596, (916) 920-4809 | 3/1/2008 | 6/30/2018 |
| 0122 | West Valley | 3200 N. Naglee Road, Sp #185, Tracy, CA 95304, County: San Joaquin | Rouse Properties | TRACY MALL PARTNERS, L.P., WEST VALLEY MALL, 110 N. WACKER DRIVE, CHICAGO, IL 60606, (209) 836-4091 | 6/11/2004 | 6/30/2014 |
| 0123 | Meadowwood Mall | 1 Meadowwood Mall, Space #H-104 | Simon Property Group | MEADOWOOD MALL SPE, LLC | 2/1/2013 | 1/31/2018 |

| # | Center | Address | Landlord | Landlord Address | | Start | End |
|---|---|---|---|---|---|---|---|
| | | Reno, NV 89502 County: Washoe | | P.O. BOX 404553 ATLANTA, GA 30384-4553 | | . | |
| 0124 | The Galleria at Sunset | 1300 W. Sunset Road, #2805 Henderson, NV 89014 County: Clark | Forest City | BPC HENDERSON LLC TERMINAL TOWER 50 PUBLIC SQUARE, SUITE 1360 CLEVELAND, OH 44113-2267 | | 3/1/2006 | 2/29/2016 |
| 0125 | Cottonwood | 10000 Coors Blvd. NW, #VC4 Albuquerque, NM 87114 County: Bernalillo | Simon Property Group | SIMON PROPERTY GROUP LP M.S. Management Associates, Inc. 225 West Washington Street Indianapolis, IN 46204-3438 | | 2/1/2012 | 1/31/2022 |
| 0126 | Prince Kuhio Plaza | 111 E. Puainako, Space #428 Hilo, HI 96720 County: Hawaii | General Growth | PRINCE KUHIO PLAZA HO RETAIL PROPERTIES I LIMITED PARTNERSHIP 110 N. WACKER DRIVE CHICAGO, IL 60606 | | 11/1/2005 | 10/31/2015 |
| 0127 | Stoneridge Shopping Center | 2463 Stoneridge Mall Pleasanton, CA 94588 County: Alameda | Simon Property Group | STONERIDGE PROPERTIES LLC M.S. Management Associates, Inc. 225 West Washington Street Indianapolis, IN 46204-3438 | | 2/1/2008 | 1/31/2018 |
| 0128 | Hillsdale Shopping Center | 44 Hillsdale Mall, #6074 San Mateo, CA 94403 County: San Mateo | BOHANNON DEVELOPMENT COMPANY SIXTY 31ST AVENUE SAN MATEO, CA 94403-3404 | | yes | 1/1/2014 | 1/31/2015 |

| No. | Name | Address | Landlord | Landlord Address | Start | End |
|---|---|---|---|---|---|---|
| 0130 | Fashion Outlets of Las Vegas | 32100-442 P Las Vegas Blvd., South<br>Primm, NV 89019<br>County: Clark | Talisman | FASHION OUTLET OF LAS VEGAS LLC<br>4000 PONCE DE LEON BLVD.,<br>SUITE 420<br>CORAL GABLES, FL 33146 | 8/1/2011 | 7/31/2015 |
| 0137 | Promenade Temecula | 40820 Winchester Road, Space #FC4<br>Temecula, CA 92591<br>County: Riverside | Forest City | TEMECULA TOWN CENTER ASSOCIATES LP<br>TERMINAL TOWER<br>50 PUBLIC SQUARE, SUITE 1360<br>CLEVELAND, OH 44113-2267 | 3/1/2009 | 2/28/2019 |
| 0140 | Fashion Valley | 7007 Friars Road, Suite 925<br>San Diego, CA 92108<br>County: San Diego | Simon Property Group | FASHION VALLEY MALL LLC<br>M. S. Management Associates, Inc.<br>225 West Washington Street<br>Indianapolis, IN 46204-3438 | 3/1/2013 | 2/28/2018 |
| 0143 | Sherwood Mall | 5308 Pacific Avenue, #90<br>County: San Joaquin | Stone Bros. & Assoc. | SHERWOOD MALL LLC<br>STOCKTON, CA 95207<br>(209) 478-1791 | 5/1/2007 | 4/30/2017 |
| 0153 | Pacific View Mall | 3301 E. Main Street, Sp #2541<br>Ventura, CA 93003<br>County: Ventura | MACERICH BUENAVENTURA LIMITED PARTNERSHIP<br>401 WILSHIRE BOULEVARD, SUITE 700<br>SANTA MONICA, CA 90407 | | 2/1/2012 | 1/31/2015 |
| 0155 | Glendale Galleria | 3217 Glendale Galleria<br>Glendale, CA 91210<br>County: Los Angeles | General Growth Properties | GLENDALE II MALL ASSOCIATES LLC<br>GLENDALE GALLERIA<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606 | 2/1/2011 | 1/31/2014 |

| | | | | | |
|---|---|---|---|---|---|
| 0159 | South Towne Center | 10450 South State Street<br>Sandy, UT 84070<br>County: Salt Lake | MACERICH SOUTH TOWNE LIMITED PARTNERSHIP<br>401 WILSHIRE BOULEVARD, SUITE 700<br>SANTA MONICA, CA 90407 | 4/1/2010 | 3/31/2020 |
| 0160 | Antelope Valley Mall | 1233 Rancho Vista Blvd, #805<br>Palmdale, CA 93551<br>County: Los Angeles | Forest City | ANTELOPE VALLEY MALL DEVELOPERS LTD<br>TERMINAL TOWER<br>50 PUBLIC SQUARE, SUITE 1360<br>CLEVELAND, OH 44113-2267 | 2/1/2011 | 1/31/2013<br>MTM |
| 0164 | Inland Center | 110 Inland Center, Unit J<br>San Bernardino, CA 92408<br>County: San Bernardino | Macerich | WM INLAND INVESTORS LP<br>401 WILSHIRE BOULEVARD,<br>SUITE 700<br>SANTA MONICA, CA 90407 | 1/1/2011 | 12/31/2020 |
| 0167 | Westfield Galleria at Roseville | 1151 Galleria Blvd, Space #1000<br>Roseville, CA 95678<br>County: Placer | Westfield | ROSEVILLE SHOPPINGTOWN LLC<br>11601 WILSHIRE BOULEVARD,<br>11TH FLOOR<br>LOS ANGELES, CA 90025 | 11/13/2008 | 1/31/2019 |
| 0170 | Layton Hills Mall | 1076 Layton Hills Mall FC-05<br>Layton, UT 84041<br>County: Davis | Jones Lang LaSalle | LAYTON HILLS MALL CMBS, LLC<br>3424 PEACHTREE ROAD, SUITE 300<br>ATLANTA, GA 30326 | 3/1/2011 | 2/28/2015 |
| 0173 | The Gateway | 140 S. Rio Grande St. #5 | Retail Properties of America, Inc. | | 11/1/2011 | 10/31/2021 |

| ID | Name | Address | Agent | Mailing Address | Date 1 | Date 2 |
|---|---|---|---|---|---|---|
| | | Salt Lake City, UT 84101<br>County: Salt Lake | RPAI SOUTHWEST MGMT LLC | P.O. BOX 413007<br>SALT LAKE CITY, UT 84141-3007 | | |
| 0176 | Valley Fair Mall | 3601 S 2700 W, #E118<br>West Valley City, UT 84119<br>County: Salt Lake | Satterfield Helm Mgmt | COVENTRY III/SATTERFIELD HELM VALLEY<br>C/O SATTERFIELD MGMT<br>3601 S. 2700 WEST, STE G128<br>WEST VALLEY CITY, UT 84119 | 3/1/2013 | 2/29/2016 |
| 0178 | Provo Towne Center | 1200 Towne Centre Blvd, Space #2086<br>Provo, UT 84601<br>County: Utah | General Growth | PROVO MALL LLC<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606 | 10/14/2003 | 1/31/2014 |
| 0180 | Victoria Gardens | 12434 North Main Street, Sp #118<br>Rancho Cucamonga, CA 91739<br>County: San Bernardino | Forest City | VICTORIA GARDENS MALL LLC<br>TERMINAL TOWER<br>50 PUBLIC SQUARE, SUITE 1360<br>CLEVELAND, OH 44113-2267 | 10/28/2004 | 10/31/2014 |
| 0181 | Fiesta Mall | 1445 W. Southern Avenue, Space 2109<br>Mesa, AZ 85202<br>County: Maricopa | Cushman & Wakefield | FIESTA MALL LLC<br>C/O SPINOSO MGMT GROUP<br>P.O. BOX 956415<br>St. Louis, MO 63195 | 4/1/2005 | 2/28/2015 |
| 0182 | Stonewood Center | 109 Stonewood St. spc# FC 11<br>Downey, CA 90241<br>County: Los Angeles | | MACERICH STONEWOOD LLC<br>401 WILSHIRE BOULEVARD, SUITE 700<br>SANTA MONICA, CA 90407 | 8/9/2005 | 7/31/2015 |

| ID | Name | Address | Landlord | Landlord Address | Date | Date |
|---|---|---|---|---|---|---|
| 0183 | Simi Valley | 1555 Simi Town Center Way, Sp #810<br>Simi Valley, CA 93065<br>County: Ventura | | W/A SVT HOLDINGS VI, LLC<br>900 N. MICHIGAN AVENUE, SUITE 1900<br>CHICAGO, IL 60611<br>(805) 581-1755 | 10/27/2005 | 10/31/2015 |
| 0185 | Citadel Outlets | 150 Citadel Dr. Sp.# FC D-2<br>Commerce, CA 90040<br>County: Los Angeles | Craig Realty | CRAIG REALTY GROUP-CITADEL, LLC<br>DEPT 9872-08<br>LOS ANGELES, CA 90084-9872 | 9/24/2005 | 9/30/2015 |
| 0188 | Westfield Mission Valley | 1640 Camino Del Rio North Sp. FC6<br>San Diego, CA 92108<br>County: San Diego | Westfield | MISSION VALLEY SHOPPINGTOWN, LLC<br>11601 WILSHIRE BOULEVARD, 11TH FLOOR<br>LOS ANGELES, CA 90025<br>(619) 296-6375 | 4/17/2006 | 1/31/2016 |
| 0190 | PARADISE VALLEY | 4550 East Cactus Road, #107<br>Phoenix, AZ 85032<br>County: Maricopa | Macerich/Westcor | WESTDAY ASSOCIATES LIMITED PARTNER<br>c/o MACERICH COMPANY<br>401 WILSHIRE BOULEVARD, SUITE 700<br>SANTA MONICA, CA 90407<br>(602) 953-6408 | 4/12/2006 | 6/30/2016 |
| 0191 | Otay Ranch Town Center | 2015 Birch Road Sp. #503<br>Chula Vista, CA 91915<br>County: San Diego | General Growth | GGP-OTAY RANCH, L.P.<br>OTAY RANCH TOWN CENTER<br>110 N. WACKER DRIVE<br>CHICAGO, IL 60606<br>(619) 427-6700 Ext. 0017 | 10/27/2006 | 8/31/2016 |

| No. | Name | Address | Company | Date 1 | Date 2 |
|---|---|---|---|---|---|
| 0193 | Town Center at Aurora | 14200 E. Alameda Ave, Unit #2071A, Aurora, CO 80012, County: | Simon Property Group — The Retail Property Trust, M.S. Management Associates, Inc., 225 West Washington Street, Indianapolis, IN 46204-3438 | 5/24/2007 | 5/31/2017 |
| 0194 | Queen Ka'ahumanu Center | 275 West Ka'ahumanu Avenue, Sp. FC06, Kahului, HI 96732, County: Maui | Jones Lang LaSalle — QKC MAUI OWNER LLC, SELIGMAN WESTERN PROPERTIES, 600 MONTGOMERY STREET, 40TH FLOOR, SAN FRANCISCO, CA 94111, (808) 877-3369 | 8/9/2007 | 3/31/2017 |
| 0195 | Lloyd Center | 2303 Lloyd Center, Portland, OR 97232, County: Multnomah | CAPREF LLOYD CENTER LLC, P.O. BOX 31001-2032, PASADENA, CA 91110-2032 | 5/1/2007 | 4/30/2017 |
| 0201 | Camino Village Plaza | 260 Suite B, North El Camino Real, Encinitas, CA 92024, County: San Diego | TERRAMAR RETAIL CENTERS LLC, 5973 AVENIDA ENCINAS, SUITE 300, CARLSBAD, CA 92008-4476, (760) 804-8642 Ext. 1123 | 12/1/2010 | 12/31/2015 |
| 0202 | Westfield Fashion Square | 14006 Riverside Drive, Sp #9270 (Storage #SM248), Sherman Oaks, CA 91423, County: Los Angeles | Westfield — SHERMAN OAKS FASHION ASSOCIATES LP, 11601 WILSHIRE BOULEVARD, 11TH FLOOR, LOS ANGELES, CA 90025 | 9/1/2012 | 2/28/2014 |
| 0203 | | 2721 West 7800 South, West Jordan, UT 84088, County: Salt Lake | Capital Advisors — CAPITAL ADVISORS, LLC, P.O. BOX 49993, LOS ANGELES, CA 90049 | 6/15/2012 | 9/14/2015 |

| No. | Name | Address | Landlord | Start | End |
|---|---|---|---|---|---|
| 0204 | Ontario Mills | 1 Mills Circle, Suite FC09, Ontario, CA 91764, County: San Bernardino | Simon Property Group — ONTARIO MILLS LIMITED PARTNERSHIP M. S. Management Associates, Inc. 225 West Washington Street Indianapolis, IN 46204-3438 | 11/2/2012 | 10/31/2022 |
| 0205 | | 2946 West 4700 South, West Valley City, UT 84118, County: Salt Lake | LEGACY MANAGEMENT LLC ENSIGN PROPERTIES 716 E. 4500 SOUTH, STE N260 MURRAY, UT 84107 | 8/1/2013 | 6/30/2023 |
| 0206 | | 14777 Bear Valley Rd, Hesperia, CA 92345, County: San Bernardino | SAS INVESTMENT CO. 20825 E. CANYON RIDGE LANE WALNUT, CA 91789 | 6/14/2013 | 6/30/2023 |
| 0207 | | 5181 W Charleston Blvd, #110, Las Vegas, NV 89146, County: Clark | TME Red Rock Plaza 2999 N. 44TH STREET, STE 425 PHOENIX, AZ 85018 (602) 374-2000 | 8/9/2013 | 8/31/2018 |
| 0208 | | 1659 Warm Springs Road, #100, Henderson, NV 89014, County: Clark | ANSOK BUILDERS, INC. 4755 DEAN MARTIN DRIVE LAS VEGAS, NV 89103 | 10/1/2013 | 9/30/2018 |
| 0921 | Arden Fair | 1868 Arden Way, #2016, Sacramento, CA 95833, County: Sacramento | Macerich — ARDEN FAIR ASSOCIATES, L.P. P.O. BOX 849473 LOS ANGELES, CA 90084-9473 (916) 920-4809 | 7/1/2009 | 1/31/2015 |

0300

0710

1021 S. Linwood Avenue
Santa Ana, CA 92705
County: Orange

5942 Priestly Drive
Carlsbad, CA 92008
County: San Diego

KLANN, L.P.
P.O. BOX 15005
SANTA ANA, CA 92735
(714) 241-1141

GDC GROUP, INC.
1808 ASTON AVENUE SUITE 180
CARLSBAD, CA 92008
(760) 496-0070 Ext. 0000

4/1/2010    3/31/2015

8/1/2012    11/30/2018

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1900 Avenue of the Stars, 11th Fl., Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (specify): **APPLICATION TO EMPLOY A & G REALTY PARTNERS AS DEBTOR'S REAL ESTATE CONSULTANT; DECLARATION OF ANDREW MARGOLICK IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 2/13/2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ . Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) 2/13/2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Neil Bason  (VIA US Mail)
United States Bankruptcy Court
255 E. Temple Street, Suite 1545
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/13/2014 | Jackeline Martinez | /s/Jackeline Martinez |
|---|---|---|
| Date | Printed Name | Signature |

## BY COURT VIA NEF

- **Michael Avanesian**   michaelavanesian@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;joanfidelson@tilemlaw.com
- **Dustin P Branch**   dustin.branch@kattenlaw.com,
  jessica.mickelsen@kattenlaw.com;brian.huben@kattenlaw.com;adelle.shafer@kattenlaw.com;donna.carolo@kattenlaw.com
- **Jeffrey W Broker**   jbroker@brokerlaw.biz
- **Peter L Duncan**   peterd@psdslaw.com, theresam@psdslaw.com
- **Jerome Bennett Friedman**   jfriedman@jbflawfirm.com,
  msobkowiak@jbflawfirm.com;jmartinez@jbflawfirm.com;sbiegenzahn@jbflawfirm.com;rfranzoia@jbflawfirm.com
- **Christopher V Hawkins**   Hawkins@sullivanhill.com, bkstaff@sullivanhill.com
- **Joan Huh**   joan.huh@boe.ca.gov
- **Dare Law**   dare.law@usdoj.gov
- **Thor D Mclaughlin**   tmclaughlin@allenmatkins.com, igold@allenmatkins.com
- **Jessica Mickelsen**   jessica.mickelsen@kattenlaw.com, adelle.shafer@kattenlaw.com;ecf.lax.docket@kattenlaw.com
- **Randy P Orlik**   rorlik@coxcastle.com
- **Ernie Zachary Park**   ernie.park@bewleylaw.com
- **Kristen N Pate**   ggpbk@ggp.com
- **Peter J Rudinskas**   pjr.legal@gmail.com
- **Ronald M Tucker**   rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Eric R Wilson**   kdwbankruptcydepartment@kelleydrye.com

## BY DEBTOR VIA U.S. MAIL

**United States Trustee**
OFFICE OF THE UNITED STATES TRUSTEE
C/O DARE LAW
915 WILSHIRE BLVD, STE 1850
LOS ANGELES, CA 90017

**Professional**
A&G REALTY PARTNERS
C/O ANDREW MARGOLICK
87 GREEN STREET, STE 307
PASADENA, CA 91105

**Debtor**
HDOS ENTERPRISES
5942 PRIESTLY DRIVE
CARLSBAD, CA 92008

**Request for Special Notice**
KRISTEN N. PATE
GGP LIMITED PARTNERSHIP, AS AGENT
110 N. WACKER DRIVE
CHICAGO, IL 60606

SIMON PROPERTY GROUP, INC.
ATTN: RONALD M. TUCKER, ESQ.
225 WEST WASHINGTON STREET
INDIANAPOLIS, INDIANA 46204

ROUSE PROPERTIES, INC.
C/O ROBERT L. LEHANE, ESQ.
KELLEY DRYE & WARREN, LLP
101 PARK AVENUE
NEW YORK, NY 10178