J. BENNETT FRIEDMAN, ESQ., State Bar No. 147056
    *jfriedman@jbflawfirm.com*
STEPHEN F. BIEGENZAHN, ESQ., State Bar No. 60584
    *sbiegenzahn@jbflawfirm.com*
RACHEL A. FRANZOIA, State Bar No. 294652
    *rfranzoia@jbflawfirm.com*

FRIEDMAN LAW GROUP, P.C.
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067-4301
Telephone: (310) 552-8210
Facsimile: (310) 733-5442

Proposed Attorneys for Debtor in Possession
HDOS ENTERPRISES

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO. 2:14-bk-12028-NB |
| | Chapter 11 |
| HDOS ENTERPRISES, | APPLICATION TO EMPLOY SCOULER & COMPANY, LLC AS DEBTOR'S FINANCIAL ADVISOR; DECLARATION OF DAN SCOULER IN SUPPORT |
| Debtor in Possession. | DATE:        [None Required]<br>TIME:<br>PLACE: |

HDOS Enterprises, the debtor and debtor in possession ("Debtor") in this chapter 11

bankruptcy case ("Case"), respectfully applies to this Court, pursuant to 11 U.S.C. §327(a) for an

Order approving the employment of Scouler & Company, LLC ("Scouler" or "Financial

Advisor") to assist the Debtor and its other professionals with the many financial aspects of the

case including, but not limited to, monthly reporting to the Office of the United States Trustee,

1

providing ongoing routine communications and financial analyses to the Debtor's creditors in this case, including any Committee as may be appointed in the case, and developing and implementing its plan of reorganization ("Plan").    In support of this Application, the Debtor alleges the following facts:

**I.**

**RECITALS**

A.    The Case was commenced February 3, 2014 ("Petition Date") by the filing, by Debtor, of a voluntary petition.[1]

B.    Debtor is operating its business in conformity with 11 U.S.C. § 1107; and no trustee has been appointed in the Case.

C.    As of the Petition Date, the Debtor had ninety-two (92) leased locations which were designed and utilized to sell a narrow range of food products with a distinctive flair.  In the first week of the Case, fifteen (15) of the leases were rejected.  That was the first step toward streamlining the Debtor's operations and moving toward the formulation of a Plan.    Debtor requires the advice and assistance of a financial advisor in connection with the continuing formation and implementation of a Plan, including, without limitation, the following types of professional services:

>    1.    Assist the Debtor in developing and implementing a Plan.  Preparation of the Plan may involve, among other things, preparing financial forecasts, engaging in liquidity planning, identifying strategic partners for sale or merger, identifying cost reduction strategies, and developing strategies to restructure the Debtor's capital Structure;

>    2.    Assist the Debtor with implementation of its Plan;

>    3.    Provide the Debtor's Board of Directors with ongoing, periodic assessments of operations and financial performance and progress towards

---

[1] Factual allegations made here are supported by the testimony of Dan Scouler ("Scouler Declaration"), or matters of which the Court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

1    achieving the Plan;

2        4.    Assist the Debtor in conducting ongoing routine communications with the

3    Debtor's lenders and other creditors, including periodic reviews of the Debtor's

4    performance and progress towards achieving its Plan;

5        5.    Provide such other similar services as may be requested by the Board

6    and/or necessary to maximize enterprise value.

7    D.    Scouler is a financial consulting, restructuring, crisis management and transaction

8    services firm with has substantial experience in and in connection with bankruptcy cases filed all

9    over the United States.  This experience and expertise is described in the accompanying Scouler

10    Declaration.

11    E.    Simply described, this Application requests that the Court enter an Order

12    approving the employment of Scouler, effective from the date the retention agreement was

13    executed.

14                                                    **II.**

15                                         **APPLICABLE LAW**

16    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

17    1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this

18    Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought

19    herein are Bankruptcy Code sections 327(a), 330, and 331 and Bankruptcy Rule 2014(a).

20    Bankruptcy Code section 327(a) provides that the debtor in possession "may employ one

21    or more . . . professional persons, that do not hold or represent an interest adverse to the estate . .

22    . to represent or assist the [debtor in possession] in carrying out [its] duties under [chapter 11]."

23    As stated in the Scouler Declaration, the Financial Advisor has substantial experience in

24    providing the kind of financial analysis and advice in the context of chapter 11 as is

25    contemplated in the parties' retention agreement.  There can be no doubt that Scouler is well-

26    qualified to perform the type of professional services needed in this Case.

27    For all of the foregoing reasons, retention of Scouler upon the terms and conditions set

28    forth in the Services Agreement (Exhibit "A" to the Scouler Declaration) is in the best interests of

the Debtor, its estate and its creditors.  As indicated in the Scouler Declaration, the work of Mr.

Scouler and his company began on February 17, 2014.  As a result, the Application requests that

approval of the Scouler employment be retroactive to February 4, 2014.  It is submitted that the

circumstances justify that relief.  *See, Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970,

974 (9th Cir. 1997), citing *Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group,

Inc.)* 40 F.3d 1059, 1062 (9th Cir. 1994).

### III.

### CONCLUSION

Employment of Scouler should be approved, and made effective from the Petition Date.

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the

relief requested here, and ordering such other and further relief as is just and proper.

Dated: March  *1*, 2014                                   FRIEDMAN LAW GROUP, P.C.

                                                                           By: _____
                                                                           J. BENNETT FRIEDMAN
                                                                           STEPHEN F. BIEGENZAHN
                                                                           RACHEL A. FRANZOIA
                                                                           [Proposed] Attorneys for Debtor in Possession

## DECLARATION OF DAN SCOULER

I, Dan Scouler, declare and state:

1.      I am the founder and CEO of Scouler & Company, LLC ("Consultant"). I make this Declaration to support the preceding Application To Employ Scouler & Company, LLC [etc.] ("Application").

2.      Until February 4, 2014, neither I nor anyone at Scouler had any relationship with HDOS Enterprises ("Debtor"); consequently, Scouler neither holds nor represents any interest adverse to the Debtor. Scouler is, in no way, affiliated with the Debtor; it holds no pre-petition claim against the Debtor or its chapter 11 estate ("Estate"); consequently, it is a disinterested person within the meaning of the Bankruptcy Code.

3.      In contemplation of the engagement, I have personally reviewed the Debtor's financials and have consulted with Debtor's management. I have concluded that Scouler can bring substantial value to the Debtor and the Estate. With that in mind, Scouler has prepared a Retention Agreement ("Agreement"). The services Scouler will render in connection with the Case are set forth in the Agreement, a true and correct copy of which is attached hereto as Exhibit "A."

4.      The Agreement is expressly subject to the approval of the Bankruptcy Court. I understand that the compensation of Scouler will be subject also to Bankruptcy Court approval.

5.      Scouler's principals and management team have decades of experience in counseling chapter 11 debtors, creditors and committees in various industries throughout the United States. Scouler's principals have extensive experience handling complex chapter 11 cases, and evaluating and selling businesses. Our services include financial advisory, business stabilization and turnarounds, asset disposition, and plan construction and implementation. To name a few, here are significant chapter 11 cases in which we have been employed to represent the debtor in possession: Contessa Premium Foods; Wheeling-Pittsburgh Steel; and LTV. A copy of the firm overview and professional biographies is attached hereto as Exhibit "B."

6.       As part of a diverse business operation, Scouler has previously, is currently, and may in the future appear or participate in numerous cases, proceedings, transactions, and engagements involving professional advisors (*e.g.*, attorneys, accountants, investment bankers, and financial consultants) as well as principals (*e.g.*, operating companies, investment funds, or other "financial investors"). In such interactions, Scouler may act as advisor, agent/consultant (whether on a fee or equity basis), or principal investor or party, and in each such capacity may be a co-advisor, consultant, or principal acting in concert with, or as a counter-party to, such other professional advisors and principals. Such professional advisors and principals involved in the foregoing interactions with Scouler and its affiliates may be involved in this proceeding and may represent or be parties in interest in this case. Except as disclosed here, none of the interactions between or among Scouler and its affiliates on the one hand, and any of such professional advisors and principal parties on the other hand, are matters directly connected or related to the Trustee, the Debtor, or this case. Further, except as disclosed here, neither Scouler nor its affiliates have represented, do represent, nor will represent any of such professional advisors or principal parties in connection with the Case. Scouler does not believe any relationship, arrangement, investment, transaction, or engagement with or related to any of the professional advisors or other entities who may be involved in this case will interfere with or impair the services to be rendered to the Debtor by Scouler in the Case.

7.       The disclosures identified above are based upon all information reasonably available to Scouler as of the date I executed this Declaration. I, or someone on behalf of Scouler will, to the extent necessary, supplement this Declaration as may be required by the Bankruptcy Code and Bankruptcy Rules if and when any other relationships exist or are modified such that further disclosure is required. Scouler will implement appropriate internal procedures to protect the interests of the Trustee, the Debtor, and the estate in connection with the representations and relationships set forth above.

8.       Scouler and the Debtor entered into the Agreement, which will govern the compensation terms between Consultant and the Debtor. Subject to this Court's approval,

1  Consultant will provide the services set forth in the Agreement for the compensation described

2  therein.

3        9.     No promises regarding compensation were made to Scouler by the Trustee in

4  connection with this case, other than in accordance with the Agreement.  Except as may be set

5  forth herein, Scouler does not have any agreement with any entity to share any compensation

6  received by Scouler in connection with this chapter 11 case other than ordinary course

7  compensation arrangements with employees of, and consultants to, Scouler.

8       Executed ~~March~~ February 28, 2014 at Los Angeles, California.  I declare, under penalty of perjury

9  under the laws of the United States that the foregoing is true and correct as a matter of my

10  personal knowledge; and that, if called as a witness, I can and will testify competently thereto.

11

12

13

                                                            DAN SCOULER

14

# Exhibit "A"



LOS ANGELES • SEATTLE • DALLAS

CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

February 17, 2014

Mr. Dan Smith
CEO
HDOS Enterprises
5942 Priestly Drive
Carlsbad, CA 92008

Dear Mr. Smith:

This letter, together with the attached Schedules and General Terms and Conditions (collectively, the "Agreement"), confirms and sets forth the terms and conditions of the engagement of Scouler & Company, LLC ("we," "us," "our" "Scouler" or "Consultant") to act as financial advisor to HDOS Enterprises ("you," "your" or the "Company"). Upon execution of this letter by each of the parties below, this letter will constitute a binding agreement between the Company and Scouler.

SERVICES TO BE PROVIDED

As directed by the Company's Board of Directors (the "Board"), Scouler shall provide the Company with, without limitation, the following services:

1. Assist the Company in developing and implementing a plan of reorganization (the "POR"). Preparation of the POR may involve, among other things, preparing financial forecasts, engaging in liquidity planning, identifying cost reduction strategies, and developing strategies to restructure the Company's capital structure.

2. Assist the Company with implementation of any phases of its POR.

3. Provide the Board with ongoing, periodic assessments of operations and financial performance, including progress towards achieving the Restructuring Plan.

4. Assist the Company in conducting ongoing routine communications with the Company's lenders and other creditors, including periodic reviews of the Company's performance and progress towards achieving its Restructuring Plan.

5. Provide such other similar services as may be requested by the Board and/or necessary to maximize enterprise value.



LOS ANGELES • SEATTLE • DALLAS

CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

We will perform our services in a manner that will permit the business operations of the Company to proceed in an orderly manner, subject to the requirements of this engagement. Our personnel will require on-site access to review books, records, reports and other data located at the offices of the Company and to discuss matters with its management and other personnel. In addition, you agree to provide reasonable access to (a) your computer systems (including reasonable computer services support) and (b) your other professional advisors, including your independent accountants and outside counsel.

This Agreement, together with the attached Schedules and the General Terms and Conditions, is intended to (i) supersede any prior agreement between the parties and (ii) serve as the entire agreement between the parties with respect to the subject matter hereof, regardless of any billing guidelines or any other policies that the Company may maintain.

We look forward to working with you on this matter. Please sign and return a copy of this Agreement signifying your agreement with the terms and provisions set forth herein and in the attached Schedules and General Terms and Conditions. If you have any questions, please call Dan Scouler at (310) 207-2244

SCOULER & COMPANY, LLC

_Daniel Scouler_

Daniel Scouler
Chief Executive Officer

AGREED TO:

HDOS Enterprises

Agreed by: _signature_

By: _____

Name: Dan Smith
Title: Chief Executive Officer

Enclosures:
Schedule I Professional Fees and Payment
Schedule II Disbursements
Schedule III Other Terms and Conditions
Schedule IV Indemnification

*Scouler*

LOS ANGELES • SEATTLE • DALLAS

CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## SCHEDULE I

### PROFESSIONAL FEES AND PAYMENT

### Hourly Rates

Our statements for professional services will be substantially based upon the amount of time spent by our professionals who perform services on your behalf and their respective hourly rates as then in effect. Those hourly rates take into account the timekeepers' experience and expertise in particular areas and are adjusted periodically.

Dan Scouler will be your principal contact with respect to this engagement and his current hourly rate is $495/hour. Additionally, the following Scouler professionals will be assisting in this matter:

| Name | Hourly Rate |
|---|---|
| Kern Gillette | $475 |
| Michael Riordan | $275 |

If a Scouler professional is traveling on account of this engagement, but not otherwise working on this matter, such time will be billed at one-half the normal hourly rate.

Additional personnel may assist with this matter as may be appropriate under the circumstances. If you have any questions or concerns about the staffing of this matter, please contact Dan Scouler.

### Billing Arrangements

Scouler shall submit fee applications and be paid in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any local rules or interim compensation procedures approved by the Bankruptcy Court.

If you have any questions about any statement for professional services and related charges that we submit to you, you should contact Dan Scouler as soon as you receive it so that we may understand and address your concerns properly.

### Administrative or Judicial Testimony

It is understood that if Scouler employees are required to testify at any administrative or judicial proceeding relating to this matter (whether during the term of the Agreement or after termination), Scouler will be compensated by the Company at the regular hourly rates for each such employee, in

Scouler

LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

effect at the time, and reimbursed for reasonable out of pocket expenses (including, without limitation, counsel fees).



LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## SCHEDULE II

### DISBURSEMENTS

Unlike many other firms, Scouler ***does not*** charge clients for the following internal expenses:

- first class U.S. postage;

- secretarial services;

- long distance telephone calls;

- conference call dial-in services;

- internal photocopying;

- facsimile transmissions; and

- internal document scanning.

With respect to disbursements incurred on your behalf to vendors and other third parties for incidental expenses (such as travel expenses), you will be billed at our invoiced costs. Scouler endeavors to (i) minimize such out of pocket expenses and (ii) incur only reasonable out of pocket expenses in light of the nature and scope of the engagement. Such out of pocket costs may include, without limitation, the following:

- airline travel (which shall be coach fare, unless coach fare is not available within the scheduling parameters required by the client);

- car rental;

- hotel;

- business meals; and

- messengers and overnight couriers.

- Additionally, it is Scouler's policy to charge 75% (up to $185/month per professional) of its professionals' cell phone bill for the period during which the professional is traveling on account of a particular client matter to that client



LOS ANGELES • SEATTLE • DALLAS

CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## SCHEDULE III

### OTHER TERMS AND CONDITIONS

## TERMINATION

Either party may terminate the Agreement for any reason at any time, with or without cause. Your termination of our services will not affect your responsibility to pay for billed and unbilled services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor professionals of your choice.

## COMMUNICATIONS WITH CLIENTS

To enable us to provide effective services, you agree to be truthful and to cooperate with us in the course of the engagement and to keep us reasonably informed of material developments.

If there are particular limitations on how you would like us to communicate with you, please advise us in advance about your preferences; we will, of course, abide by your wishes in this regard. Unless you advise us to the contrary, however, we will assume that communication by e-mail and fax is acceptable to you. Absent special arrangements, we do not employ encryption technologies in our electronic communications.

## SEVERANCE OF TERMS

If all or any part of our Agreement is or becomes illegal, invalid or unenforceable in any respect, then the remainder will remain valid and enforceable.

## THIRD PARTY RIGHTS

No provision of our Agreement is intended to be enforceable by any third party. Accordingly, no third party shall have any right to enforce or rely on any provision of our Agreement.

## ASSIGNMENT

We may assign the benefit of our Agreement to any partnership or corporate entity which carries on the business of Scouler & Company in succession to us. You will accept the performance by such assignee of the Agreement in substitution for our performance.

Subject to the foregoing paragraph, neither you nor we shall have the right to assign or transfer the benefit or burden of our Agreement without the written consent of the other party.

*Scouler*

LOS ANGELES • SEATTLE • DALLAS

CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## RESOLVING PROBLEMS AND DISPUTES

If you have any complaints or concerns about our work for you, please raise these with the professional responsible for your engagement. We will investigate your complaint promptly and carefully and do what we reasonably can to resolve the difficulties to your satisfaction.

## LIMITATIONS ON ENGAGEMENT

Because of the time and scope limitations implicit in our engagement, the depth of our analyses and verification of the data is significantly limited. We understand that we are not being requested to perform an audit nor to apply generally accepted auditing standards or procedures. We further understand that we are entitled, except in the event that it is unreasonable to do so, to rely on the accuracy and validity of the data disclosed to us or supplied to us by your officers, directors, employees and agents (and those of the debtor in the case of lender or creditors' committee engagements). We will not, nor are we under any obligation to, update data submitted to us, or extend our activities beyond the scope set forth in the Agreement, unless we agree to do so upon your specific request. Further, due to the factors referenced in this paragraph, any periodic oral and/or written reports provided by us will not provide assurances concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. Our work will be performed on a "level-of-efforts" basis; that is, the circumstances of our engagement may cause our advice to be limited in certain respects based upon, among other matters, the limited extent of available data and the lack of opportunity for supporting investigations.

## CONFIDENTIALITY

You agree to treat any information received from us, whether orally or in writing, with the utmost confidentiality and, except as provided in this letter, will not publish, distribute or disclose in any manner any information developed by or received from us without our prior written approval (except to your officers, directors, employees, attorneys, advisors or lenders, to whom you may disclose such information on a 'need to know' basis without our prior written approval). Such approval shall not be unreasonably withheld. Our approval is not needed if (a) the information sought is required to be disclosed by an order binding on the Company or us, issued by a court having competent jurisdiction over the Company or us, as applicable (unless such order specifies that the information to be disclosed is to be placed under seal) or (b) such information is otherwise publicly available. We agree that all confidential non-public information that you provide us or that we receive from your accountants or outside counsel in connection with this engagement will be treated confidentially by us, except as required by law or as authorized.

*Scouler*

LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## NON-SOLICITATION OF CONSULTANTS

You agree to promptly notify us if you extend (or solicit the possible interest in receiving) an offer of employment to a principal or employee of Scouler and agree that you will pay Scouler a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus, to be paid to Scouler's former principal or employee that you hire at any time up to one year subsequent to the date of the final invoice rendered by Scouler with respect to this engagement.

## CONFLICTS OF INTEREST

We have in the past and may in the future provide services to various parties who may be adverse to you on unrelated matters. We have discussed these relationships with you and you hereby expressly agree that you do not believe that this creates for us a conflict of interest in relation to this engagement.

## INDEPENDENT CONTRACTOR STATUS

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, Scouler will have complete and exclusive charge .of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. None of Scouler's employees, including, as applicable, any employee(s) serving as Chief Restructuring Officers, will be entitled to receive from Scouler's clients any vacation pay, sick leave, retirement, pension or social security benefits, workers compensation, disability, unemployment insurance benefits or any other employee benefits. Scouler will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

## DISCLOSURE OF ENGAGEMENT

Notwithstanding anything to the contrary contained herein, Scouler shall have the right to disclose its retention or the successful completion of its services in marketing or promotional materials placed by Scouler, at its own expense, in financial and other newspapers or otherwise. Scouler shall provide you with any marketing or promotional materials placed by Scouler pursuant to this letter agreement and engagement and you must approve the content of such materials prior to their distribution, which approval shall not be unreasonably withheld.

## GOVERNING LAW

This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New York.

*Scouler*

LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## JURISDICTION; SERVICE OF PROCESS

ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS INITIATED BY YOU, OR SCOULER IN CONNECTION HEREWITH OR THEREWITH SHALL BE BROUGHT AND MAINTAINED IN THE STATE AND FEDERAL COURTS LOCATED IN THE BOROUGH OF MANHATTAN, NEW YORK, NEW YORK. YOU IRREVOCABLY CONSENT TO THE SERVICE OF PROCESS BY REGISTERED MAIL, POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE OF NEW YORK AT THE ADDRESS SPECIFIED IN THE ENGAGEMENT LETTER. YOU ALSO HEREBY EXPRESSLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH YOU MAY HAVE OR HEREAFTER MAY HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. TO THE EXTENT THAT YOU MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO YOURSELF OR YOUR PROPERTY, YOU HEREBY IRREVOCABLY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THE AGREEMENT.

## WAIVER OF JURY TRIAL

YOU HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM OF ANY KIND ARISING OUT OF OR RELATED TO THIS AGREEMENT.

*Scouler*

LOS ANGELES • SEATTLE • DALLAS

CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## SCHEDULE IV

### INDEMNIFICATION AGREEMENT

This indemnity is an integral part of that certain engagement letter dated February 17, 2014 (which together with these Schedules, and as the same may be renewed, modified or amended from time to time, is referred to herein as the "Agreement") by and between Scouler & Company, LLC ("Scouler") and HDOS Enterprises (the "Company"), for services to be rendered to the Company by Scouler.

## A.    SCOPE OF INDEMNIFICATION

The Company agrees to and shall indemnify and hold harmless each of Scouler, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of Scouler, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.   The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of Scouler, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.   The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

These indemnification provisions shall not in any way limit and shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the

*Scouler*

LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

Agreement or Scouler's and its personnel's role under the Agreement, Scouler or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or Scouler or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

**B.   NOTIFICATION OF EXISTENCE OF CLAIMS**

Indemnified Parties will notify the Company reasonably promptly upon actually becoming aware of the existence or commencement of an action, proceeding or investigation with respect to which the Indemnified Party proposes to demand indemnification hereunder; *provided, however*, that any failure by an Indemnified Party to provide reasonably prompt notice to the Company will not relieve the Company of its obligations hereunder, except to the extent that such failure shall have actually and materially prejudiced the defense of such action.

**C.   PAYMENT OR REIMBURSEMENT OF EXPENSES**

Expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, will be promptly paid and/or reimbursed by the Company upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. The Company hereby accepts its undertaking, and each Indemnified Party hereby undertakes, and to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company

Scouler

LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

## D.    UNENFORCEABILITY OF INDEMNIFICATION

To provide for just and equitable contribution if the express provisions hereof provide for indemnification but a claim is made hereunder but a court of competent jurisdiction enters a final non-appealable judgment finding that the indemnification is unenforceable, then the relative fault of the Company, on the one hand, and the Indemnified Party or Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

## E.    JUDICIAL APPROVAL OF RETENTION

If the Company and Scouler seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which Scouler would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, application, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such assumption, retention or authorization is approved by any court.  The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim. Neither termination of the Agreement nor termination of Scouler's engagement nor the filing of a petition under chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

*Scouler*

LOS ANGELES • SEATTLE • DALLAS
CHICAGO • ATLANTA • CHARLOTTE • NEW YORK

## F.    EFFECT OF TERMINATION OR BANKRUPTCY

Neither termination of the Agreement nor termination of Scouler's engagement nor the filing of a petition under chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

## G.    NON-EXCLUSIVITY

The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

# Exhibit "B"

Scouler & Co. Firm Biographies
HDOS Enterprises
2.21.14

<u>Firm Overview</u>

Scouler & Company is a financial restructuring, crisis management and transaction services firm serving companies, creditors and lenders.

The portfolio of services for our firm encompasses financial advisory, business stabilization and turnarounds, administering wind downs and closures, crisis and interim executive management. Scouler also serves as liquidating trustee and receiver and is often involved in transaction advisory services.

Scouler & Company Interim Executive Management provides an objective perspective at the CRO, CEO, CFO, CIO, COO and CTO level. As Financial Advisors our services include business plans, operational programs, restructuring proposals, lender negotiations, vendor negotiations, and strategic planning. Our Business Stabilization expertise includes creating cash flow forecasting models, developing cost reduction programs, consolidating and closing facilities, converting surplus assets into cash, and improving liquidity.

We are intensely focused on adding value to every engagement and, as a result, our consultants excel at crafting creative, one-of-a-kind solutions that optimize the outcome for our clients.

<u>Consultant Biographies</u>

<u>Dan Scouler, CEO</u>

Dan Scouler is the founder and CEO of Scouler & Company. With over 35 years of experience assisting companies experiencing financial difficulty, he specializes in bankruptcy reorganization, out-of-court restructuring, and interim management. Dan has extensive experience consisting of roughly one hundred in-court and out-of-court restructurings. Specifically, he played a leading advisory role in the bankruptcies of Contessa Premium Foods, Deak & Co., Wheeling- Pittsburgh Steel, LTV, Allis Chalmers, Ernst Home Centers, Mercury Finance Company, National Auto Credit, Hechinger Company, AB Dick and numerous private companies. His interim management experience includes Chief Restructuring Officer of TVC, Inc., Wherehouse Entertainment, and interim CFO of NUI Corp.

An experienced expert witness on insolvency and reorganization matters, Dan Scouler provides expert testimony on a broad range of issues including the creditors' motion for the appointment of a Chapter 11 Trustee, reorganization plan feasibility, business plan viability, valuations and the reasonableness of select transactions. His experience in a wide range of assignments has provided him with

knowledge and insight into variety of industries including major manufacturing, retail, financing, leasing, broadcasting, airline, real estate, high technology, telecom and distribution.

Prior to establishing Scouler & Company, Dan was a Senior Managing Director of FTI Corporate Recovery, a wholly owned subsidiary of FTI Consulting, and the leader of FTI's interim management practice. He began his restructuring career at Touche Ross, and then moved to the Canadian firm of Clarkson Gordon & Co. where he became a partner in 1981. While at Clarkson Gordon, he worked as the Receiver Manager on many of Canada's largest corporations, including Anil Hardboard and Fishery Products Limited.

Dan Scouler holds an honors degree in Business Administration from the University of Western Ontario and is a qualified Canadian Chartered Accountant.

Kern Gillette, Principal

Kern Gillette is a Principal at Scouler & Company with a diverse background obtained through 38 years of experience; 16 of which were C-level executive positions held prior to joining the Firm. With Scouler & Company, Kern has experience in a variety of industries, including food retail, technology, manufacturing and distribution, retail and wholesale distribution, financial and professional services, entertainment and media, aerospace, real estate and construction, and alternative energy.

Prior to joining Scouler & Company, Kern Gillette held various executive positions in the retail, food, and distribution industries, including CFO of Olympic Boat Centers, where he guided the company through the bankruptcy process. Kern also held the positions of President, CEO and CFO of Cinnabon, Inc. where he designed and executed a successful turnaround of this leading food retailer with 210 company stores and 180 franchised stores. Under Kern's management, the Company was sold for 20% above the appraised value. He also served as Vice President of Finance and Administration of Brown and Cole, a $300 million grocery retailer with 31 stores where he was responsible for Accounting, Risk Management, Information Technology, Loss Prevention and Facility management.

Kern Gillette is a graduate of the University of Washington, where he earned a BA in Accounting, and Eastern Washington University, where he completed his MBA. He is also a Certified Public Accountant.

Michael Riordan, Consultant

Michael Riordan is a Consultant at Scouler & Company. Mike has served as an analyst for Scouler & Company in various engagements in the construction, media and entertainment, distribution and healthcare industries. Mr. Riordan's focuses are financial analysis, operations management and business development. Mr.

Riordan has experience managing payroll, health claims and other transitional items during the sale of R&H Studios, an Academy Award winning visual effects studio in Los Angeles, and managing the winding down of two healthcare facilities.

Prior to joining Scouler & Company, Mr. Riordan was an intern at Mercado Global, a social enterprise, Horton International, a global retained executive search firm and CBRE, the world's largest commercial real estate services firm.  Mr. Riordan is a graduate of the University of Connecticut with a BS in International Management.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1900 Avenue of the Stars, 11th Fl., Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION TO EMPLOY SCOULER & COMPANY, LLC AS FINANCIAL ADVISOR;  DECLARATION OF DAN SCOULER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/3/2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) 3/3/2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Neil Bason (VIA US Mail)
United States Bankruptcy Court
255 E. Temple Street, Suite 1545
Los Angeles, CA 90012

☒ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/3/2014 | Jackeline Martinez | /s/Jackeline Martinez |
| *Date* | *Printed Name* | *Signature* |

## BY COURT VIA NEF

- **Michael Avanesian**   michaelavanesian@tilemlaw.com,
  malissamurguia@tilemlaw.com;dianachau@tilemlaw.com;joanfidelson@tilemlaw.com
- **Dustin P Branch**   dustin.branch@kattenlaw.com,
  jessica.mickelsen@kattenlaw.com;brian.huben@kattenlaw.com;adelle.shafer@kattenlaw.com;donna.carolo@kattenlaw.com
- **Jeffrey W Broker**   jbroker@brokerlaw.biz
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Peter L Duncan**   peterd@psdslaw.com, theresam@psdslaw.com
- **Jerome Bennett Friedman**   jfriedman@jbflawfirm.com,
  msobkowiak@jbflawfirm.com;jmartinez@jbflawfirm.com;sbiegenzahn@jbflawfirm.com;rfranzoia@jbflawfirm.com
- **Christopher V Hawkins**   Hawkins@sullivanhill.com, bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com
- **Joan Huh**   joan.huh@boe.ca.gov
- **Dare Law**   dare.law@usdoj.gov
- **Thor D Mclaughlin**   tmclaughlin@allenmatkins.com, igold@allenmatkins.com
- **Jessica Mickelsen**   jessica.mickelsen@kattenlaw.com, adelle.shafer@kattenlaw.com;ecf.lax.docket@kattenlaw.com
- **Kevin M Newman**   knewman@menterlaw.com, kmnbk@menterlaw.com
- **Randy P Orlik**   rorlik@coxcastle.com
- **Ernie Zachary Park**   ernie.park@bewleylaw.com
- **Kristen N Pate**   ggpbk@ggp.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Peter J Rudinskas**   pjr.legal@gmail.com
- **Ronald M Tucker**   rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Eric R Wilson**   kdwbankruptcydepartment@kelleydrye.com

## BY DEBTOR VIA U.S. MAIL

**United States Trustee**
OFFICE OF THE UNITED STATES TRUSTEE
C/O DARE LAW
915 WILSHIRE BLVD, STE 1850
LOS ANGELES, CA 90017

**Debtor**
HDOS ENTERPRISES
5942 PRIESTLY DRIVE
CARLSBAD, CA 92008

**Professional**
SCOULER & COMPANY, LLC
ATTN: DAN SCOULER
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA  90067

**Committee of Unsecured Creditors**
SIMON PROPERTY GROUP, INC.
C/O RONALD M. TUCKER
225 W. WASHINGTON STREET
INDIANAPOLIS, IN 46204

HANSEN DISTRIBUTION GROUP
C/O JOHN R. HAYNES LOEVENGUTH
SCHULZE, HAYNES LOEVENGUTH & CO.
4340 VON KARMAN AVE., STE 110
NEWPORT BEACH, CA 92660

GGP LIMITED PARTNERSHIP
C/O JULIE MINNICK BOWDEN
110 N. WACKER DRIVE
CHICAGO, IL 60606

**Proposed Counsel for the**
**Committee of Unsecured Creditors**
JEFFREY N. POMERANTZ
JEFFREY W. DULBERG
PACHULSKI STANG ZIEHL & JONES LLP
10100 SANTA MONICA BLVD., 13TH FLOOR
LOS ANGELES, CALIFORNIA 90067

**Request for Special Notice**

CARLYLE ER METRO, LLC
c/o PAUL M. WEISER, ESQ.
BUCHALTER NEMER
16435 NORTH SCOTTSDALE RD, STE 440
SCOTTSDALE, AZ 85254-1754

TORREY PINES
C/O PETER DUNCAN, ESQ.
PYLE SIMS DUNCAN & STEVENSON
401 "B" STREET, STE 1500
SAN DIEGO, CA 92101-4238

SIMON PROPERTY GROUP, INC.
ATTN: RONALD M. TUCKER, ESQ.
225 WEST WASHINGTON STREET
INDIANAPOLIS, INDIANA 46204

ROUSE PROPERTIES, INC.
C/O ROBERT L. LEHANE, ESQ.
KELLEY DRYE & WARREN, LLP
101 PARK AVENUE
NEW YORK, NY 10178

THE MACERICH COMPANY, WESTFIELD, LLC AND
STARWOOD RETAIL PARTNERS, LLC
C/O DUSTIN P. BRANCH
KATTEN MUCHIN ROSENMAN LLP
2029 CENTURY PARK EAST, SUITE 2600
LOS ANGELES, CA 90067-3012

TRUSTEES OF THE ESTATE OF BERNICE PAUAHI
BISHOP, AKA KAMEHAMEHA SCHOOLS DBA
WINDWARD MALL
C/O SUSAN TIUS, ESQ.
RUSH MOORE LLP
A LIMITED LIABILITY LAW PARTNERSHIP
737 BISHOP STREET, SUITE 2400
HONOLULU, HAWAII 96813

TERRAMAR RETAIL CENTERS, LLC
C/O TODD R. GABRIEL, ESQ.
SPARBER ANNEN MORRIS & GABRIEL, APLC
501 WEST BROADWAY, STE 1720
SAN DIEGO, CA 92101-3555